523 A.2d 1118

**Michelle MASCARO, a Minor, and Kenneth Mascaro, a Minor, by their parents Kenneth Mascaro and Michelle Mascaro, Appellees,**

**v.**

**YOUTH STUDY CENTER, City of Philadelphia, Wilson Goode and Commonwealth of Pennsylvania, Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1986.

Decided April 7, 1987.

Hansel B. Minyard, City Sol., Barbara R. Axelrod, Deputy City Sol., Appeals, Armando A. Pandola, Jr., Chief, Claims, Philadelphia, for appellants.

David Assad, Philadelphia, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of the City of Philadelphia and its Youth Study Center (Appellants) from the Opinion and Order of Commonwealth Court reversing in part the Order of the Court of Common Pleas of Philadelphia County which entered judgment on the pleadings in its favor and dismissed a complaint against it and other parties filed by Michelle Mascaro and Kenneth Mascaro, in their own right and as parents of their children, Kenneth Mascaro and Michelle Mascaro, both minors (Appellees).

Appellees alleged in their complaint that one Claude Opher, a detainee in the Philadelphia Youth Study Center (Center), a detention center for juvenile criminal offenders, escaped from the detention center because the City of Philadelphia (City) and the Center negligently maintained the real estate, thereby facilitating the escape. The complaint also alleges that once at large, Opher, and an accomplice, broke into Appellees' home in Philadelphia. While they were burglarizing Appellees' house, Appellees came home discovering the intruders. Opher and his accomplice tied up Mr. and Mrs. Mascaro and young Kenneth, while the accomplice raped Mrs. Mascaro. Opher took young Michelle and, after beating her, took her into her parents' bedroom where he raped and sodomized her for several hours, as the rest of the family, bound and gagged, were forced to listen to her screams. Opher was eventually tried and convicted and received a sentence of incarceration of 50

to 150 years for his actions. Mr. Mascaro, unable to live with the memory and consequences of what happened to his wife and daughter, committed suicide.

Prior to Mr. Mascaro's suicide, he, his wife and children, filed the instant complaint against the Youth Study Center, City of Philadelphia, its then managing director, Wilson Goode, and the Commonwealth of Pennsylvania and claimed that because of Appellants' negligent maintenance of the detention center, Opher was permitted to escape and injure Appellees. By Answer, Appellees denied the allegations of negligence and, in their New Matter, invoked the affirmative defenses of governmental and official immunity conferred by 42 Pa.C.S. §§ 8541,[1] and asked for judgment on the pleadings.

The trial court agreed with Appellants and granted judgment on the pleadings whereupon an appeal was taken to Commonwealth Court. That court found Mr. Goode immune from suit, but held that the complaint did state a cause of action against the City and Center under the exception to governmental immunity found at 42 Pa.C.S. § 8542(b)(3),[2] covering the care, custody, and control of real estate by a local agency. By its order, Commonwealth Court reversed the trial court's entry of judgment on the

1. 42 Pa.C.S. § 8541 provides:
   Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

2. 42 Pa.C.S. § 8542(b)(3) provides:
   (3) *Real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. A (sic) used in this paragraph, "real property" shall not include:
   (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
   (ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
   (iii) streets; or
   (iv) sidewalks.

pleadings and remanded the matter to the trial court for proceedings, 89 Pa.Cmwlth. 388, 492 A.2d 786.

The City and Center filed a Petition for Allowance of Appeal, which we granted to consider the extent of the real estate exception to local agency immunity, and whether it bars an action against the City and Center under these facts.

## I.

In response to our Court's abrogation of the judicially created doctrine of governmental immunity in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), the Legislature enacted the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564. This Act legislatively raises the shield of governmental immunity against any damages on account of any injury to a person or property caused by any act of a local agency or employee thereof or any other person, except as otherwise provided. 42 Pa.C.S. § 8541, *supra.* We have already found this statute to be a valid exercise of legislative authority granted by the Pennsylvania Constitution, *Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981), and have recently upheld a legislatively imposed cap on the amount that may be recovered by claimants in the aggregate when such damages are permitted under the exceptions in the Political Subdivision Tort Claims Act. *Smith v. City of Philadelphia,* 512 Pa. 129, 516 A.2d 306 (1986).

By way of exception to the legislatively created rule of governmental immunity, the Act provides that liability may be imposed if two conditions are satisfied, and if the injury occurs as a result of one of eight acts described at 42 Pa.C.S. § 8542(b). The two threshold conditions required are that 1) damages would be recoverable under common law or a statute creating a cause of action against one not having an immunity defense, and 2) the injury must be caused by the negligent acts of the local agency or its employee acting within the scope of its office or duties,

excepting therefrom acts of crime, fraud, malice or willful misconduct.[3]

As pertains to Appellees' claims against the City and Center, acts by a local agency or its employees which may result in the imposition of liability include the care, custody or control of real property in the possession of the local agency. 42 Pa.C.S. § 8542(b)(3), *supra.*

In analyzing Appellees' complaint, Commonwealth Court determined that it stated a cause of action against the City and Center. First, it found that, at common law, a landowner owed a duty to keep his property safe from disrepair. If the disrepair was the cause of an injury or permitted a crime to take place which later injured another, the landowner could be held liable. 474 Pa. 588, 379 A.2d 111 (1977), and Sections 365 and 448, *infra,* of the Restatement Second of Torts for these propositions.

Second, Commonwealth Court determined that the alleged acts of negligence of the City and Center and its agents in not securing the doors and windows of the Center satisfied the second requirement of 42 Pa.C.S. § 8542(a)(2), *supra.* Third, the Court ruled that the exception to immunity for the care, control and custody of real estate was broad enough to encompass both injuries caused directly by the defective condition of the property, as well as injuries

---

3. 42 Pa.C.S. § 8542(a) provides:

   *§ 8542. Exceptions to governmental immunity*

   (a) *Liability imposed.*—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

   (1) The damages would be recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

   (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

caused indirectly through a defect of the property, coupled with the criminal acts of a third person.

Appellants strenuously argue that the real estate exception to governmental immunity does not extend to the criminal acts of detainees who escape. Appellants also argue that while control over the physical plant is one for which they may be liable in damages, this control does not extend to control of its detainees and the injuries they cause. This argument is premised on their belief that control over the Center, as a correctional institution, is a purely governmental function for which immunity has not been waived. Finally, Appellants argue that if they are liable for Opher's escape, they can only be held accountable to Appellees if they were aware of a danger posed to them, and knowing same, failed to take any steps to prevent these acts.

## II.

■ We agree that as a precondition to maintaining an action against the City and Center, Appellees had to satisfy the three statutory requirements. First, they had to demonstrate that at common law or by statute one not having an immunity defense available could be held liable for the same harm alleged against the local agency. Appellees urge that our decision in *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977), provides the necessary common law analogy. In *Ford*, the landlord of a dwelling house permitted his structure to become dilapidated and a haven for large rats, dogs and arsonists. Two fires broke out in the house and because the second fire spread to the next door neighbor's home (five to six feet from this structure), almost totally destroying it, we held the landlord of the firetrap responsible to the neighbor for the destruction of his home. We specifically ruled that "a property owner can reasonably be expected to know that the visible conditions of vacant property in a state of disrepair may attract, for various purposes, children or adults, who, having entered the property, might act, either negligently or intentionally, in a

manner that would cause a fire." *Ford*, 474 Pa. at 593, 379 A.2d. at 113.

We premised a finding of negligence by referring to Section 365 of the Restatement of Torts, Second, which provides in pertinent part:

> A possessor of land is subject to liability to others outside of the land for physical harm caused by the disrepair of a structure.... if the exercise of reasonable care ... would have made it reasonably safe by repair or otherwise.

We also noted that even if the superseding force of an arsonist was the cause of the fire, it would not insulate the landlord from liability because the landlord should have realized the likelihood that such a situation might be created because of his negligent maintenance of the property. *Restatement of Torts, Second*, Section 448.[4]

Under the circumstances of that case, the result was totally appropriate and, in theory, can be said to apply here. A dilapidated, abandoned, rat infested structure a few feet distant from occupied dwellings was permitted to burn down and damage a nearby dwelling. *Ford* teaches that:

> If one engages in negligent conduct toward another, such as unreasonably increasing the risk that that person will suffer a particular kind of harm, it cannot be said, as a matter of law, that the actor is not liable simply because the foreseeable plaintiff suffered the foreseeable harm in a manner which was not foreseeable. Appellee's conduct in this case could have increased the risk that appellant's house would be damaged by fire. Such harm in fact occurred. Given these circumstances, it was for the jury

---

**4.** Section 448 provides:
> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime.

to determine whether the appellee's conduct, if it was negligent, was superseded by the intervening force. *Ford*, 474 Pa. at 596, 379 A.2d at 115.

Appellees also argue that this Court has recognized a duty on the part of the custodian of personalty to keep that personalty out of the reach of individuals who would misuse it and harm others with it. Thus, in *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957), we found that the owner of a loaded gun, who kept it in a place where young children frequented, would be liable for the injuries suffered when the child found the loaded gun and shot his young cousin. In *Anderson v. Bushong Pontiac Co.*, 404 Pa. 382, 171 A.2d 771 (1961), we imposed liability on the owner of a used car lot for damages done when a car was stolen by minors and negligently driven, hitting a pedestrian, rendering him a paraplegic. It appeared in that case that the car keys were stolen from the car and the owner, who knew of the theft, did nothing to secure the car from theft. We found that it was reasonable to foresee that the car would be stolen by youths who frequented the area, and that the car lot owner had a duty to safeguard the property from misuse.

These cases, and cases like them, also establish liability over one charged with the control and custody of property when the custodian knows, or should have known, that the property could be misused by persons who could commit crimes.

Here, Appellants alleged that because the City and Center negligently maintained their property, Opher, a dangerous criminal, escaped. The City and Center knew Opher had at least fourteen arrests and five convictions, including three other rapes, four burglaries and three robberies, and that he had escaped from detention centers three other times. Following one escape, Opher committed rape, aggravated assault, robbery, burglary, involuntary deviate sexual intercourse, and auto theft against two elderly sisters. Given Opher's known propensities to crime, Appellees alleged that the Center and City knew, or should have known,

that Opher would take advantage of the defect at the Center, escape and commit more burglaries and rapes, including the ones at issue here.

Under our case law and the Restatement of Torts, Second, we have held landowners liable for failing to take precautions against unreasonable risks that stem directly and indirectly from the property including the contemplated acts of third parties, whose crimes are facilitated by the condition of the property. *Ford v. Jeffries, supra; Anderson v. Bushong Pontiac Co., Inc., supra; Kuhns v. Brugger, supra; Churbuck v. Union Railroad Company,* 380 Pa. 181, 110 A.2d 210 (1955); *McCarthy v. Ference,* 358 Pa. 485, 58 A.2d 49 (1948); *Nelson v. Duquesne Light Co.,* 338 Pa. 37, 12 A.2d 299 (1940); *Welser v. United Gas Improvement Co.,* 304 Pa. 227, 155 A. 561 (1931). Accordingly, Appellees have stated a cause of action which could be maintained at common law against one not having the immunity defense, and thus satisfied the first requirement imposed by the statute at 42 Pa.C.S. § 8542(a)(1), *supra.*

### III.

■ Under the second requirement imposed by 42 Pa.C.S. § 8542(a)(2), *supra,* Appellees had to demonstrate that the injury was caused by the negligent acts of the agency or an employee acting within the scope of his office or duties, excluding acts of crimes, fraud, malice or willful misconduct. Appellees argue that they satisfied this condition by pleading averments that the City and Center failed to secure the locks, doors and windows of the Center so as to prevent Opher's escape. We have already noted that at common law a negligent act includes permitting real property to fall into disrepair, thereby creating an unreasonable risk to others outside the land, and that generally speaking, such a risk can include the predictable criminal acts of third parties. Accordingly, when Appellees alleged that the negligent repair of the Center was a cause of injuries to them, they were not incorrect. The negligence of the City and Center was a condition necessary to their injury in the "but

for" sense and satisfies the statutory requirement. Although it might be argued that Opher was able to escape, not because of the negligent maintenance of the detention facility, but rather, because he was insufficiently guarded, in either event, the negligence of the local agency is implicated.

## IV.

Lastly, we come to the most difficult question under consideration; namely, whether the real estate exception to the Political Subdivision Tort Claims Act exposes the City and Center to liability coextensive with the liability imposed on private landowners. In pertinent part, the section permits a cause of action against the political subdivision for injuries arising out of "the care, custody or control of real property in the possession of the local agency...." 42 Pa. C.S. § 8542(b)(3), *supra.*

In construing this section, it must be kept in mind that it represents an *exception* to the absolute rule of governmental immunity stated in 42 Pa.C.S. § 8541.

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof *or any other person.* (Emphasis added.)

■ Since Section 3 is an exception to the rule of immunity, we believe that its extent must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability. *Casey v. Geiger,* 346 Pa.Superior Ct. 279, 499 A.2d 606 (1985); *Vann v. Board of Education of the School District of Philadelphia,* 76 Pa. Commonwealth Ct. 604, 464 A.2d 684 (1983).

Commonwealth Court has consistently held that the real estate exception imposes a standard of liability on the political subdivision to an extent no greater than that of a private landowner, and that this duty is to maintain the property safely for the activities for which it is regularly used, for which it is intended to be used, or for which it may

reasonably be forseen to be used. *Vann; Vince v. Ring-gold School District,* 92 Pa.Commonwealth Ct. 598, 499 A.2d 1148 (1985). Commonwealth Court has also ruled that the conduct or negligent act complained of must be directly related to the condition of the property. *Frank v. SEPTA,* 96 Pa.Commonwealth Ct. 221, 506 A.2d 1015 (1986); *Fezzano v. Borough of Ridley Park,* 94 Pa.Commonwealth Ct. 179, 503 A.2d 57 (1986).

We agree that the real estate exception to governmental immunity is a narrow exception and, by its own terms, refers only to injuries arising out of the care, custody or control of the real property in the possession of the political subdivision or its employees. Acts of the local agency or its employees which make the property unsafe for the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used, are acts which make the local agency amenable to suit. Acts of *others,* however, are specifically excluded in the general immunity section (42 Pa.C.S. § 8541), and are nowhere discussed in the eight exceptions. On this basis alone, we must conclude that any harm that others cause may not be imputed to the local agency or its employees. This, of course, is a difference from the duties and liabilities of a private landowner who can be held accountable for the forseeable criminal conduct of others under *Ford v. Jeffries.*

The real estate exception, however, has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately. *Davies v. Barnes,* 94 Pa.Commonwealth Ct. 145, 503 A.2d 93 (1986); *Messina v. Blairsville-Saltsburg School District,* 94 Pa.Commonwealth Ct. 100, 503 A.2d 89 (1986); *Johnson v. City of Philadelphia,* 93 Pa.Commonwealth Ct. 87, 500 A.2d 520 (1985); *Acker v. Spangler,* 92 Pa.Commonwealth Ct. 616, 500 A.2d 206 (1985); *Usker v. Upper St. Clair School District,* 87 Pa. Commonwealth Ct. 461, 487 A.2d 1022 (1985); *Robson v. Penn Hills School District,* 63 Pa.Commonwealth Ct. 250,

437 A.2d 1273 (1981); *Wimbish v. School District of Penn Hills,* 59 Pa.Commonwealth Ct. 620, 430 A.2d 710 (1981).[5]

▮▮▮ We believe those cases to have been decided correctly and they persuade us to hold that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

We believe the Legislature has clearly precluded the imposition of liability on itself or its local agencies for acts of third parties by its language of § 8541, *supra,* and that it has not seen fit to waive immunity for these actors or their acts in any of the eight exceptions.

Such a legislative judgment is wholly within the province of the Legislature according to our current interpretation of sovereign and governmental immunity, *Carroll v. York,* 496 Pa. 363, 437 A.2d 394 (1981), and is consistent with the general rule that the criminal and negligent acts of third parties are superseding causes which absolve the original actor (the City and Center) from liability for the harm caused by such third parties. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984); *Miller v. Checker Yellow Cab Co.,* 465 Pa. 82, 348 A.2d 128 (1975); *Estate of Flickinger v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973); *Liney v. Chestnut Motors, Inc.,* 421 Pa. 26, 218 A.2d 336 (1966); *Green v. Independent Oil Co.,* 414 Pa. 477, 201 A.2d 207 (1964); *Kite v. Jones,* 389 Pa. 339, 132 A.2d 683 (1957); *DeLuca v. Manchester Laundry and Dry Cl. Co.,* 380 Pa. 484, 112 A.2d 372 (1955).

This is also consistent with the Legislative determination that the criminal acts, actual fraud, actual malice or willful

**5.** In *Davis,* Petition for Allowance of Appeal was denied on October 21, 1986, at No. 116 E.D. Allocatur Docket 1986. In *Johnson,* Petition for Allowance of Appeal was denied on July 31, 1986, at No. 1419 E.D. Allocatur Docket 1985. In *Robson,* Petition for Allowance of Appeal was denied on March 18, 1982, at No. 339 W.D. Misc. Dkt. 1981. In *Messina, Acker,* and *Usker,* no Petitions for Allowance of Appeal were filed.

misconduct of its *own* agency or employees acting within the scope of their duties are not the subject of suit or liability. 42 Pa.C.S. § 8542(a)(2), *supra*. It would be incongruous, indeed, to shield the City or Center from liability for the crimes of its agents and employees, but impose liability for the crimes of others. We believe, given the legislative scheme of immunity, that the Act consistently excludes all criminal acts from liability, including the acts of criminals, such as Opher, who take advantage of defects in municipal property to commit their own crimes.

The Order of Commonwealth Court is reversed, and the Order of the Court of Common Pleas of Philadelphia County is reinstated.

HUTCHINSON, J., joins the majority opinion and files a concurring opinion.

LARSEN, J., files a dissenting opinion.

HUTCHINSON, Justice, concurring.

I join the majority opinion. I agree that the real estate exception to the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8542(b)(3), contemplates recovery only for the artificial condition or defect of the land itself and does not impose liability upon government entities for the acts of third parties. I write separately to emphasize that, on these facts, a proximate cause analysis would insulate appellants from liability for negligence. The appellants' negligence, in failing to properly secure a juvenile detention center, may have been the cause-in-fact of the injuries suffered by the appellees. However, appellants' omissions are not the legal cause of the harm due to the intervening criminal acts of Opher. Both cause-in-fact and legal causation must be present for a plaintiff to recover on a negligence theory.

LARSEN, Justice, dissenting.

Initially, I agree with the Commonwealth Court, and with parts II and III of the majority opinion, that the appellees, the Mascaros, have stated a cause of action which could be maintained at common law against a person not having

available a defense of immunity; that cause of action lies in trespass for the recovery of damages for personal injuries proximately caused by the negligence of appellants, the City of Philadelphia and its Youth Study Center, in allowing the detention structure to become dangerously defective and to remain in a state of dangerous disrepair despite knowledge that such defects facilitated and encouraged escapes, which condition led to the escape of the highly dangerous Claude Opher, a known escape artist and brutal sexual offender.

The Commonwealth Court relied upon this Court's decision in *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977), and our application there of sections 365 and 448 of the Restatement (Second) of Torts (1965), to conclude:

> This case, as *Ford v. Jeffries*, is one for the jury to determine whether the local agency defendants negligently failed to maintain the Center, whether that failure was the legal cause of the plaintiffs' injuries, whether the defendants' acts, if negligent, afforded an opportunity to a third person to commit a crime, and whether the defendant agencies realized or should have realized that the likelihood that such an opportunity would be created and that a third person, such as Opher, would avail himself of the opportunity to commit a crime.

89 Pa.Cmwlth. 388, 492 A.2d 786 at 790.

The majority agrees with the Commonwealth Court's interpretation of the Restatement and finds that the common law cause of action was supported not only by *Ford v. Jeffries*, but also by several other decisions of this Court, stating:

> These cases, and cases like them, also *establish liability over one charged with the control and custody of property when the custodian knows, or should have known, that the property could be misused by persons who could commit crimes.*

> Here, Appellants alleged that because the City and Center negligently maintained their property, Opher, a dangerous criminal, escaped. ... Given Opher's known propensities to crime, Appellees alleged that the Center

and City knew, or should have known, that Opher would take advantage of the defect at the Center, escape and commit more burglaries and rapes, including the ones at issue here.

Under our case law and the Restatement of Torts, Second, we have held landowners liable for failing to take precautions against unreasonable risks that stem directly and indirectly from the property including the contemplated acts of third parties, whose crimes are facilitated by the condition of the property. (citations omitted) *Accordingly, Appellees have stated a cause of action which could be maintained at common law* against one not having the immunity defense, and thus satisfied the first requirement imposed by the statute at 42 Pa.C.S. § 8542(a)(1), *supra.*

At 360.

The majority also has no difficulty in finding the requisite causation under 42 Pa.C.S.A. § 8542(a)(2) ("The injury was caused by the negligent acts of the local agency or an employee thereof ..."), holding that "when Appellees alleged that the negligent repair of the Center was a cause of injuries to them, they were not incorrect." At 360. This finding is proper and is amply supported by the Restatement and by the prior decisions of this Court as set forth in the majority opinion, section II.[1]

Despite its determinations that appellees have stated in their complaint a common law cause of action and that the averments of that complaint satisfy the statutory "threshold" requirements of the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8542(a), and its finding that the "negli-

1.  For further support, *see* Restatement (Second) of Torts section 449, Tortious or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent, and the comments thereto, and section 302B, Risk of Intentional or Criminal Conduct, and comments (e) ("There are ... situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others.") and (e)(F) (actor liable under this section where he "has taken charge or assumed control of a person whom he knows to be peculiarly likely to inflict intentional harm upon others.") *See also Douglas W. Randall, Inc. v. AFA Protective Systems, Inc.,* 516 F.Supp. 1122 (E.D.Pa.1981), *aff'd* 688 F.2d 820 (3rd Cir.1982).

gent repair of the Center was a cause of the injuries" to appellees,[2] the majority nevertheless denies recovery to these appellees who were seriously injured due to appellants' negligent maintenance of the detention center. This denial of recovery is based upon an exceedingly narrow, and unwarranted, construction of the "real estate exception" of the Act, 42 Pa.C.S.A. § 8542(b)(3) which permits recovery of damages against a political subdivision where the injury results from negligence in the "care, custody or control of real property in the possession of the local agency...." The majority first offers the following interpretation of this provision:

> [T]he real estate exception to governmental immunity is a narrow exception and, by its own terms, refers only to injuries arising out of the care, custody or control of the real property in the possession of the political subdivision or its employees. Acts of the local agency or its employees which make the property unsafe for *the activities for which it is regularly used, for which it is intended to be used, or for which it may reasonably be foreseen to be used,* are acts which make the local agency amenable to suit.

At 362 (emphasis added).

Under this interpretation, the appellees have made out a viable claim against appellants under section 8542(b)(3). Sections II and III of the majority opinion convincingly demonstrate that appellees' injuries and damages arose out of and were caused by the negligent "care, custody and control of real property" in the possession of appellants, and that this negligence led to the predictable and foreseeable criminal acts of a third party, an inmate of that real property, the "Youth Study" detention center. But for appellants' negligence in the care, custody and control of the real property, an innocent family would not have been

---

**2.** The majority specifically holds that "at common law a negligent act includes permitting real property to fall into disrepair, thereby creating an unreasonable risk to others outside the land, and that generally speaking, such a risk can include the predictable criminal acts of third parties." At 360.

terrorized and devastated by the predictable acts of the vicious escapee, Claude Opher, and an eleven year old girl and her mother would not have been brutally raped and sodomized in the presence of their father/husband and brother/son, both of whom were bound and gagged.

The "care, custody and control" of the detention center, if proven to be negligent, obviously rendered (in the words of the majority) "the property unsafe for the activities for which it is regularly used, . . . intended to be used, . . . [and] reasonably . . . foreseen to be used. . . ." After all, despite its fanciful designation as the "Youth Study" Center, the real property in question here was not a boy scout camp, a learning center, or a school for the performing arts—it was a *detention center,* a jail, a prison; a place to hold violent and delinquent offenders under the age of eighteen; a place to detain those offenders and keep them away from the general, law-abiding citizenry of this Commonwealth in order to avoid exactly the type of tragedy that occurred in the instant case.

If a municipality was in the possession of a water reservoir and, due to the negligent care, custody and control of that real property, the reservoir burst and caused extensive damage to persons and property a mile down the road, I submit that such negligence would fall squarely within the "real estate exception" to the Act, and the municipality would not be immune from liability. The damages caused outside the real property by the unleashing of the dangerous instrumentality housed on the property would be a foreseeable and predictable result of the negligent care, custody or control of the property. In the instant case, the dangerous instrumentality housed on appellants' real property was a vicious criminal, and that instrumentality was unleashed by appellants' negligent care, custody and control of the property, causing serious, foreseeable and predictable damage to persons outside of the property.

Thus, section 8542(b)(3), as initially interpreted by the majority, allows appellees to seek recovery for their damages from appellants, and does not immunize appellants from liability. However, even though the language of

section 8542 of the Act would *explicitly permit* appellees to seek recovery of damages from appellants in this case, the majority somehow gleans a further, *implicit limitation* on recovery, holding

> that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability.

At 363.

This implicit limitation is derived from the majority's newly-announced principle of construction of this Act, that in construing the scope of an "exception" to the rule of immunity, "its extent must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability." At 361. Once again, in creating such a miserly rule of construction, the majority ignores—indeed, it tramples upon—the rights guaranteed our citizens by the Pennsylvania Constitution.

> Article I, section 11 of the Constitution declares that: All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay.

Article III, section 18 states:

> Other than Workmen's Compensation, in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property.

I remain of the belief that the Political Subdivision Tort Claims Act violates these provisions of the Constitution and unconstitutionally denies and/or limits the recovery of damages, justice and the right of remedy to those injured by the negligence of local agencies and municipalities. *See e.g., Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981) (Larsen, J., dissenting); *James v. SEPTA,* 505 Pa. 137, 477 A.2d 1302 (1984) (Larsen, J., dissenting); *Smith v. City of Philadelphia,* 512 Pa. 129, 516 A.2d 306 (1986) (Larsen, J.,

dissenting). Now, the majority adds insult to constitutional injury in holding that we must construe the "exceptions" to immunity narrowly and imply *further limitations on recovery* that are *not found in the language of the Act.* In my opinion, the construction of the eight enumerated exceptions should be exactly the opposite—we should be construing these eight provisions *broadly to provide the fullest coverage possible* in order to minimize the constitutional damage done by the creation of a rule of immunity. This was made clear by Mr. Justice Papadakos' eloquent dissenting opinion in *Smith v. City of Philadelphia, supra,* (joined by this author) wherein he stated persuasively:

> Nothing is clearer to me than the plain, untechnical language of [Article I] section 11. It simply guarantees that all people shall have remedies for their injuries *without exception....*

> What is even clearer is the direct, mandatory language of Article III, section 18....

> \* \* \* \* \* \*

> No limitation or exception is contained by the language of the Section, except for Workmen's Compensation cases, *and no other exception should be written into the Section by this Court.*

> \* \* \* \* \* \*

> *I view this Section as a broad mandate by the people to the Legislature directing it not to meddle in the people's right to recover against those responsible for injuring them.* Article III, Section 18 ... stands as a bulwark, *until the people otherwise direct,* against all present and future attempts by the Legislature to fritter away the rights of the people. *We do a great disservice to the people, whose trust we have accepted, to interpret this Section in any way but in their favor.*

> \* \* \* \* \* \*

> *The majority's present course is regrettable, because it ignores the duty entrusted to this Court of protecting rights reserved by the people, for the people, and instead creates rights in favor of the creature of the people, at the expense of the people,* who in actuality, are

the only sovereign under our form of government. Accordingly, I dissent.

512 Pa. at 150–54, 516 A.2d at 317–19 (emphasis added).

Equally regrettable is the majority's course of action today which creates a rule of narrow construction and further limits an injured person's right of recovery as if the Pennsylvania Constitution did not exist. While the majority of this Court has previously accepted the Political Subdivision Tort Claims Act as constitutional, it has now progressed beyond passive approval of the rule of immunity to active participation in the legal conspiracy that denies the right of remedy for injuries done to our citizens.

As I stated in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), "I can think of no greater function or more honorable pursuit than for the [government] to care for those whom it has injured or maimed." *Id.* 479 Pa. at 407, 388 A.2d at 720. Those injured and maimed citizens pay for the Youth Study Center, the reservoirs, the sewage treatment plants, the roads, the highways, etc. To construe the recovery provisions of the Political Subdivision Tort Claims Act narrowly, to *imply further limitations* to recovery into that Act, as the majority does today, is an insult to civilization and a violation of the "trust we have accepted" to protect the rights reserved by the people and for the people.

I dissent.