## J.F. v. County of Erie

*James J. Bruno,* for plaintiffs.
*John W. Beatty,* for defendant.

BOZZA, *J.,* April 23, 1990 — Before the court àre preliminary objections of defendants in the nature of a demurrer to counts I, III, IV and VI of plaintiff's complaint pursuant to the Pennsylvania Municipalities Tort Claims Act, 42 Pa.C.S. §8541, and a demurrer to counts II and V based upon the alleged failure to state a cause of action under 42 U.S.C. §1983. In addition, plaintiffs have filed preliminary objections in the nature of a motion to strike the defendants' supplemental brief with appended copies of previous orders of court.

Plaintiff, J.F., is the adopted daughter of plaintiffs, R.F. and P.F., who are husband and wife. As a result of a finding that J.F. had been severely beaten by her natural mother, she was adjudicated dependent by the juvenile division of this court on March 9, 1984. On April 19, 1984 the court ordered that J.F. "be placed under the care and supervision of Children's Services of Erie County for an indefinite period of time with continued placement in foster care." The order further provided for supervised visitation with the natural mother in the office. As a result of this adjudication, J.F. was placed in the foster home of her adoptive parents by the defendant Office of Children and Youth, hereinafter referred to as "Children's Services." On October 22, 1984, by order of court, placement with Children's Services was continued and an increase in visitation between J.F. and her natural mother was autho-

rized "at the discretion of Children's Services." Subsequent orders continued placement with Children's Services and approved various treatment plans of the agency.

From the time of the adjudication of dependency until the date of her adoption, plaintiffs have alleged that J.F. was required to undertake both supervised and unsupervised visits with her natural mother, at the insistence of Children's Services. During this period of visitation, while at the home of her natural mother, J.F. was allegedly subjected to physical, sexual and emotional abuse by her natural mother, her mother's paramour and her natural brother.

Plaintiffs set forth state law claims in counts I, III, IV and VI of their complaint. Count I avers that the County of Erie and the Department of Human Services, acting through the Office of Children and Youth, acted grossly negligent in providing inadequate investigation, supervision, and monitoring of J.F.'s visitation with her natural mother. Counts III and IV are based upon the Pennsylvania Adoption Opportunities Act. Count III avers that J.F. has been wrongfully denied the benefits pursuant to this act despite her qualification for said benefits. Count IV contends that defendants were grossly negligent in failing to provide J.F. with a subsidy under the act and in otherwise negligently administering the act in J.F.'s case. Count VI is a negligence claim on behalf of R.J.F. Jr. and P.J.F., as the adoptive parents of J.F., for present and future expenses incurred and emotional distress suffered by them as a result of the alleged negligence of defendants.

In counts II and V of the plaintiffs' complaint, federal claims are set forth pursuant to 42 U.S.C. §1983. Count II alleges that, as a result of defendant's failure to protect J.F. from this course of

abusive conduct, she "has been deprived . . . of her liberty without due process of law in violation of her rights guaranteed under the laws of the United States and the 14th Amendment to the Constitution." Finally, count V avers that, by failing to award J.F. a subsidy pursuant to the mandate of the Adoption Opportunities Act, defendants have deprived J.F. "of her liberty and property without due process of law. . ."

Defendants in their preliminary objections claim that those counts of plaintiffs' complaint which sound in negligence, which should include counts I, III, IV and VI, are barred by the provisions of the Pennsylvania Municipalities Tort Claims Act. In addition, defendants contend that counts II and V, based on an alleged violation of 42 U.S.C. §1983, must be dismissed for failure to state a claim upon which relief may be granted.

Defendants, County of Erie, the Department of Human Services and the Office of Children and Youth, are local agencies that fall within the purview of the Pennsylvania Municipalities Tort Claims Act, 42 Pa.C.S. §8541 et seq. Pursuant to this act, these local agencies enjoy general governmental immunity as defined at common law. By way of exception, however, the act provides for the imposition of liability if two conditions are satisfied, and if the injury occurs as a result of one of eight circumstances set forth at 42 Pa.C.S. §8542(b). The threshold conditions required are that (1) damages would be recoverable under common law or a statute creating a cause of action against one not having an immunity defense, and (2) the injury must be caused by the negligent acts of the local agency or its employee acting within the scope of its office or duties, excepting therefrom acts of crime,

fraud, malice or willful misconduct. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987).

This court does not find that any of plaintiffs' state law claims set forth in counts I, III, IV and VI of this complaint fall within any of the exceptions to governmental immunity. In rendering this determination the court notes that the parameters of this act have been narrowly interpreted in order to achieve the expressed legislative intent of insulating political subdivisions from tort liability, *Mascaro, supra.*

Defendants also contend that plaintiffs have failed to set forth a cause of action upon which relief may be granted in federal claims encompassed in counts II and V pursuant to an alleged deprivation of civil rights as defined by 42 U.S.C. §1983. Defendants claim that the natural mother of J.F. and her paramour cannot be deemed state actors nor can their abusive conduct be denominated state action and that the defendants have no recognized duty to protect such a minor from the perpetration of abuse by such private actors. Defendants' contentions are based primarily on the case of *DeShaney v. Winnebago Dept. of Social Services,* ___ U.S. ___, 109 S.Ct. 998 (1989), which involved the delineation of the liability of a county and its local social services agency under section 1983 for injuries sustained by a child at the hands of his abusive father where the local department of social services was on notice of the abusive conduct and there was an existent state statutory duty to protect children from abuse.

In *DeShaney,* the petitioner was a boy who was beaten and permanently injured by his father who had custody of his son subsequent to a divorce. The respondents were social workers and other local

officials who had received complaints of the abusive conduct and had reason to find the reports credible, but nonetheless did not act to remove the petitioner from his father's custody.* In March 1984, the father, Randy DeShaney, beat Joshua so extensively that he fell into a life-threatening coma. The emergency surgery indicated a series of hemorrhages caused by traumatic injuries to the head inflicted over a significant period of time. As a result of his comatose condition, Joshua suffered severe brain damage leading to his expected lifetime confinement to an institution.

Joshua and his mother brought an action under section 1983 alleging that the respondents had deprived Joshua of his liberty without due process of law in violation of the 14th Amendment by failing to intervene to protect him against a risk of violence at the hands of his father of which they knew or should have known.

---

* The Winnebago County authorities initially learned that Joshua DeShaney might be a victim of abuse in January 1983, when his father's second wife notified the police. In January 1983, Joshua was admitted to a hospital with multiple bruises and abrasions, which prompted the examining physician to notify the Department of Social Services. A "Child Protection Team" was convened and the team decided that there was insufficient evidence of child abuse to place him in the custody of the court and Joshua was returned to the domicile of his father.

A month later, the DSS caseworker handling Joshua's case was notified by emergency room personnel that Joshua had been treated for suspicious injuries. During the next six months, the caseworker visited the home on a monthly basis, during which she observed a number of suspicious injuries. In November 1983, the DSS was again notified of further treatment at the emergency room. On the caseworker's next two visits to Joshua's home, she was told that Joshua was too ill to see her. Despite these apparent suspicious circumstances, the DSS took no protective action throughout this entire period. *DeShaney, supra*, at 1001-2.

The Supreme Court affirmed the Court of Appeals for the Seventh Circuit in finding that a cause of action under section 1983 had not been set forth. The court held that neither the state nor its agencies or local officials have a general duty to protect an individual from private violence. Therefore, a state's failure to protect an individual against the violence of private actors does not constitute a violation of due process. The court noted that when the state takes a person into its custody and holds him there against his will, the Constitution imposes a duty to assume a measured degree of responsibility for that individual's safety and well-being. The *DeShaney* court did not find that such a special relationship existed in the circumstances of Joshua's placement with his natural father.

Applying the reasoning of *DeShaney,* the court concludes that plaintiffs have set forth sufficient facts to state a cause of action pursuant to 42 U.S.C. §1983. Plaintiffs have asserted that Children's Services, an agency of Erie County government, exercised control over J.F. as a result of her adjudication as a dependent child. By definition a "dependent child" is a child who, for a variety of reasons, is in need of protective intervention. 42 Pa.C.S. §6302. As a consequence of dependency, a child may be placed with a legal custodian who, among other things, has the "duty to provide for the care, protection, training and education and the physical, mental and moral welfare of the child. . ." 42 Pa.C.S. §6357. In this case, J.F. was placed under the care and supervision of Children's Services who in turn was authorized to continue her placement in a foster home. Children's Services had the additional responsibility of delineating a treatment plan and

recommending and monitoring a schedule of supervision for J.F. with her natural mother.

An affirmative duty on the part of Children's Services to protect J.F. arose from the relationship created as a result of the finding of dependency which brought J.F. entirely within the agency's discretionary control. See *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285 (1976); *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452 (1982).

Within the context of a substantive due process analysis, it is the state's capacity to restrict an individual's freedom to act on his or her own behalf which gives rise to the duty to prevent a wrongful deprivation of liberty. It is not the act of restraining that offends the due process clause, but rather a state's wrongful exercise of its otherwise legitimate right to control. *DeShaney, supra,* at 1006.

When an agency of government has been given the authority to control a child's access to and contact with the social environment, there exists a concomitant responsibility to protect the person from foreseeable harm. While the degree of control and the personal attributes of the individual are of considerable importance in determining the nature and extent of the state's prophylactic obligations, the character of the controlling mechanism is not determinative. Though not institutionalized, J.F. was in every way under the control of Children's Services. Indeed, as a result of the dependency determination, Children's Services stood "in loco parentis" and was obligated to protect the interests of the child. See *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967). Moreover, the agency was specifically directed by order of court to exercise its discretion in determining an increase in visitations between J.F. and her natural mother.

Accepting as true all well pled facts in plaintiff's complaint, there is simply no question that defendant, Children's Services, exercised its responsibility to care for and supervise J.F. in a manner that resulted in physical and emotional harm. J.F., without recourse, was placed in an environment where she allegedly sustained continued physical, sexual and emotional abuse.

The holding of the Supreme Court in *DeShaney* cogently limits the application of section 1983 to circumstances indicating pervasive governmental control. Short of total institutionalization, it is difficult to imagine circumstances more indicative of the government's ability to affect a child's welfare than those that existed with regard to J.F.'s relationship with Erie County's Office of Children and Youth. Unlike the abused child in *DeShaney,* J.F. was entirely within the grasp of the protective agency's' discretionary authority. It has not been asserted that Children's Services failed to intervene to protect J.F. from third-party abuse which occurred in circumstances it did not create. For J.F. visitation with her abusive mother and the resultant exposure to her mother's paramour and her brother is alleged to have been "at the insistence of and upon the recommendation" of Children's Services and carried out under its supervision. If plaintiffs are able to meet their burden of proof in sustaining the allegations in their complaint, federal law provides an appropriate remedy.

Plaintiffs have filed preliminary objections in the nature of a motion to strike defendants' supplemental brief and attached orders of this court's Juvenile Division from consideration. This court shall deny plaintiffs' motion finding that the orders objected to are a matter of record and relevant and necessary to this court's previous determination.

## ORDER

And now, April 23, 1990, upon consideration of the preliminary objections of defendants in the nature of a demurrer, it is hereby ordered, adjudged and decreed that said demurrer is granted as to counts I, III, IV and VI of plaintiffs' complaint and is denied as to counts II and V of plaintiffs' complaint.

It is further ordered that plaintiffs' preliminary objection in the nature of a motion to strike is hereby denied.