## Constanzo v. Yetzer

*Richard T. Kupersmith,* for plaintiffs.
*Charles D. Younger,* for defendant City of Reading.
*Frederick B. Buck,* for defendant Reading School District.

SCHMEHL, J.L., *J.,* August 16, 2007—At issue is an appeal by plaintiffs with regard to this court's decision to both grant the preliminary objections of defendant City of Reading, by an order dated May 26, 2004 as well as an order dated January 26, 2004, granting defendant Reading School District's motion for judgment on the pleadings, therefore dismissing the case against both municipal defendants. Plaintiffs filed a notice of appeal on June 21, 2007 from both orders.

The thrust of the court's decision was that plaintiffs' claims did not fit under any exception to the Municipal Tort Claims Act and therefore both municipal entities were immune from suit. On July 3, 2007, plaintiffs filed a concise statement of the matters complained of on appeal.

This appeal stems from the commencement of an action in 2002, based upon the following facts. On April 7, 2000, around 1:22 p.m., the minor plaintiff, Albert Constanzo was seriously injured when he was struck by a 1979 Jeep Quadra-Trac driven by defendant Rosemarie Yetzer as he attempted to cross 13th Street at the corner of Oley Street and 13th Street in Reading, Berks County, Pennsylvania. Albert Constanzo suffered numerous fractures to both legs, as well as other serious injuries to his head, neck, back and arms. At the time of this accident, no crossing guard was present at the intersection. As a result of the accident, Albert, through his mother Milagros, has brought suit against the city and the district, the driver, Rosemarie Yetzer, as well as her husband, John Yetzer, the registered owner of the 1979 Jeep.

Plaintiffs' concise statement of matters complained of on appeal focuses almost exclusively[1] on whether a

---

1. Plaintiffs contend in their concise statement that the actions taken by the city and the district were negligent, and they list elements that might support that contention. The real issue is not whether someone was or was not negligent. The issue in this appeal is whether, under Pennsylvania law, the city and the district can properly be sued, and whether this court was correct in issuing the orders at issue in this case. Whether or not the city was negligent is irrelevant, and this court will not address those portions of the concise statement offering such arguments.

crossing guard is a traffic control device under Pennsylvania law, specifically 42 Pa.C.S §8542(b)(4). For the following reasons, this court believes the immediate appeal should be denied.

Plaintiffs argue that crossing guards using devices to control traffic, as well as the crossing guards themselves, are traffic control devices under 42 Pa.C.S. §8542(b)(4). That section, in its entirety, reads as follows:

"Trees, traffic controls and street lighting.—A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems, under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." 42 Pa.C.S. §8542(b)(4).

Nowhere in that language is a human being, let alone a crossing guard mentioned. The very language used specifically and unmistakably describes inanimate devices and theoretical situations. A "dangerous condition," for example, is a straightforward noun described by a qualifying adjective. A "person" is not a "condition". This is a grammatical impossibility; the equivalent of saying a "person" is "foreseeability", or that a person with money in their pocket is "currency". It simply makes no logical sense, and is too great a leap

for this court to take. Similarly, it is far too great a departure to say that a "person" is a "tree", "traffic sign", "light" or "other traffic control", "street light" or a "street lighting system." The statute, as straightforwardly written as it is, must be strictly construed not to include people.

Even assuming, arguendo, that not having a crossing guard present is a dangerous condition, the plaintiffs' argument would still fail. Again, a person cannot be a condition, let alone a dangerous condition. For that matter, this court is uncertain how a school's knowledge of the absence of a crossing guard could be actual notice of a dangerous condition. There are simply too many flaws in plaintiffs' interpretation of the statute. The statutory language is clear and unambiguous, and further, it is neither overbroad nor insufficient, and this court acted properly in its reading of the statute, and in its orders based thereupon.

Plaintiffs have also utilized case law in prior filings to support their contentions. Plaintiffs have cited *Mascaro v. Youth Study Center,* 514 Pa. 351, 356, 523 A.2d 1118, 1121 (1987) to support their contention[2] that crossing guards and the devices they use are traffic control devices. *Mascaro* held that the "real property" exception to sovereign immunity applied to a detention center that allowed an inmate to escape. *Id.* at 360, 523 A.2d at 1123. Plaintiffs argued that because *Mascaro* held that a government agency *may* be liable for the

---

2. It is somewhat noteworthy that this is the only case cited by plaintiffs, and it is not remotely on point. This is mentioned only to point out the difficulty of plaintiffs in finding legal support for their arguments, and not meant to belittle their position in any way.

care and control of property within its possession, that the term "traffic controls" *must* include things besides lights and signs that control the flow of traffic, such as crossing guards and police officers. This court is simply unwilling to paint with such a broad brush.

It is far too great a leap and a serious misapplication of law to rule that since 42 Pa.C.S. §8542(b)(3) (which lists property in possession of a local agency) could also include a detention center, *i.e.,* a piece of property, then section 8542(b)(4) should include living, breathing people as traffic control devices. It is not a departure to classify a piece of real property as a piece of real property. However, it is a grand departure (and, not inconsequentially, a rewriting of the statute) to call a person a light bulb. *Mascaro* is practically irrelevant to this appeal, and is in no way influential in this case.

By contrast, both the city and the district rely on *Erney v. Wunsch,* 35 D.&C.3d 440, 444 (1983), which states unequivocally that a crossing guard is not a traffic control device. Plaintiffs correctly point out that this is merely a court of common pleas decision and thus has limited precedential value. However, the case was favorably cited by the Third Circuit in *Smith v. City of Chester,* 851 F. Supp 656, 658 (1994), and referenced in such a way as to imply the Pennsylvania Supreme Court would likely agree with the *Erney* reasoning. In the same case, but in an earlier proceeding, the United States District Court for the Eastern District of Pennsylvania reached the same conclusion, that a crossing guard is not a traffic control device. *Smith v. City of Chester,* 842 F. Supp. 147 (E.D. Pa. 1994). These prior

decisions must all be considered when deciding the issues of this case, and this court approached them with appropriate respect in reaching its own conclusions.

Finally, the city cites *Robinson v. City of Philadelphia,* 666 A.2d 1141, 1143 (Pa. Commw. 1995) which held, much as this court does today, that section 8542(b)(4) applies only to inanimate objects, and not to human crossing guards. Even without considering whatever precedential value these opinions may have, the very fact that numerous courts have all reached the same conclusion is telling, and this court agrees with such reasoning. There is very limited case law on this topic, but all the case law available supports the positions of the city and the district, as well as the decisions of this court to date.

Ultimately, Pennsylvania statutes and case law are squarely behind the city and the district, and are completely unsupportive of plaintiffs' arguments. The district and the city only have liability if there is a "malfunction" or a defect to a traffic control device. A crossing guard simply cannot be considered a traffic control device under the law for the aforementioned reasons.

Regardless of the law, a little boy was hurt, and the city and the district should do everything in their collective powers to ensure that such an accident does not occur again. Parents should be able to take comfort in the knowledge that the pedestrian activity of walking to and from school is free from certain perils. They should not have to add this daily activity to the list of dangers their children face on a regular basis. Further,

it should go without saying that a crossing guard who is supposed to be on duty at a specific place during a specific period of time should be there barring an emergency, and in the event of an emergency, a back-up should be readily available. The parents and school-going children of Berks County deserve and should expect nothing less. It is the adamant hope of this court that even though the City of Reading and the Reading School District are free from "legal" liability in this matter, they take a thorough and concentrated look at their policies to make sure that this type of accident does not happen in the future. The law is very clear on this issue, and both the city and the district were properly dismissed as defendants to this action.

For all of the reasons stated herein, this court respectfully requests that the instant appeal be denied.