## Green *v.* Independent Oil Company, Appellant.

478

Argued March 17, 1964. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Harold E. McCamey,* with him *Dickie, McCamey, Chilcote & Robinson,* for appellant.

*Carl A. Belin,* with him *Belin & Belin,* and *Urey & Mikesell,* for appellees.

OPINION BY MR. JUSTICE JONES, April 21, 1964:

On July 2, 1960, Independent Oil Company (Independent), a Delaware corporation, owned a certain property in Clearfield Borough, Clearfield County, improved with a building used as a gasoline service station. This property and building were occupied by Woodrow Graffius (Graffius), under a written lease with Independent.

"The gas station consists of a large room with a very wide door opening on the street, in which two motor vehicles may enter. A hoist for raising vehicles above the floor level, to permit work and attention underneath, is in this room. The other part of this space is for placing of cars for washing and other servicing that may be required. At one end of the service room is an enclosed space used as an office, and toward the rear of the service room is a smaller room used as a storage room."[1]

At approximately 10 p.m. on July 2, 1960, Graffius' minor son, Woodrow Graffius, Jr., and Norman Green,

---

[1] From the opinion of the court below.

a soft drink customer, were on the premises, standing near the doorway between the service room and the storage room. Graffius and Larry Schultz, an employee of Graffius, closing the station for the night, were cleaning the station floor. Schultz was engaged in throwing over the floor a mixture of kerosene and gasoline,[2] and Graffius was sweeping this mixture around, together with soap, to clean the floor. Shortly after starting to spread the mixture on the floor, Graffius heard a "cracking noise" and Schultz heard a "boom". Both saw a sheet of flame sweep through the service room and then saw both Graffius, Jr. and Green staggering out, severely burned. "The service room showed no evidence of explosion, and very little evidence of fire. According to the explosive expert subpoenaed by [Independent and Graffius], the kerosene-gasoline mixture used was highly volatile and inflammable. Gasoline evaporates into the air, and is heavier than the air. The fumes spread rapidly throughout the air. Any spark or fire of any kind, static electricity, defective wiring, or from a firecracker, could cause the gasoline in the air to ignite, burn throughout the air rapidly, and would make a sound when it ignited . . . ."[3] Both Graffius, Jr. and Green died as the result of the burns received.

In the Court of Common Pleas of Clearfield County two separate trespass actions were instituted: (a) an action by Green's personal representative against Independent and Graffius, defendants, wherein Graffius, Jr.'s personal representative was joined as an additional defendant; (b) an action by Graffius, Jr.'s personal representative against Independent and Graffius, defendants, wherein Green's personal representative was joined as an additional defendant. These actions

---

[2] Graffius for many years had used this same mixture to clean the floor.

[3] From the opinion of the court below.

were tried before a court and jury,[4] and the jury rendered separate verdicts: a $72,370.70 verdict in favor of Green's personal representative against Independent and Graffius, and a $13,093.75 verdict in favor of Graffius, Jr.'s personal representative against Independent and Graffius. Graffius' motions for a new trial and judgments n.o.v. were not pursued. Independent's motions for a new trial and judgments n.o.v. were overruled and judgments entered on the verdicts. Independent appeals from both judgments.

Apparently,[5] Independent seeks judgments n.o.v., or, in the alternative, a new trial.

Independent seeks judgments n.o.v. on two grounds: (1) that the relationship between Independent and Graffius was that of independent contractee-independent contractor and, therefore, Independent had no vicarious responsibility on the theory of respondeat superior for negligence on Graffius' part; (2) assuming, arguendo, Independent was shown to have been negligent in the repair of the hoist of the gasoline station so that oil leaked therefrom to the service room floor, such negligence on Independent's part was not a proximate cause of the accident, and its negligence was superseded by Graffius' negligence in using the highly volatile and inflammable gasoline-kerosene mixture on the floor.

Between Independent and Graffius were two undertakings, one embodied in the lease of the property which clearly created a landlord-tenant relationship and one embodied in the written agreement whereby Independent constituted Graffius as a dealer in its

---

[4] The actions were consolidated for trial.

[5] From the context of Independent's brief such would appear; however, at the end of its brief it would appear Independent seeks only judgments n.o.v.

products. It is from the latter agreement, if at all, that any vicarious responsibility must arise on the part of Independent for any negligent acts on Graffius' part.

The latter agreement—herein termed Dealer's Agreement—recited, inter alia, that Independent constituted Graffius a dealer in its products for a term "beginning April 18, 1960 and ending January 31, 1961, and thereafter, upon the terms and conditions [of the agreement], from year to year, until either party shall give to the other at least" 90 days written notice of a desire not to renew the agreement; that Graffius would maintain in repair the buildings and other facilities on the property and the equipment required for storing and selling products purchased by Graffius from Independent; that Independent would lend certain specified equipment to Graffius for the storage and sale of its products; that Graffius would purchase all motor oils and fuel from Independent; that Graffius would pay all utility charges and other expenses connected with the maintenance and operation of the property and business, provide all governmental licenses and permits for the conduct of the business and pay all taxes for conducting the business; that Graffius would "not hold himself out as the Agent of [Independent]" and "shall conduct all business in [Independent's] products in [his] name, consequently displaying his name on the premises."; that "[Independent] may forthwith terminate this contract at any time by written notice to [Graffius] on any default by [Graffius] or [Independent] may suspend deliveries during such default".

The record indicates that Graffius, in addition to Independent's motor oils and fuel, sold various automobile accessories, soft drinks, candy and cigarettes, all the profits from which went to Graffius personally; the sales tax permits and the electric bills were in

Graffius' name; Graffius hired and fired his own employees, paid their wages and unemployment and social security taxes; all monies from the operation of the gasoline station were kept in his own bank account, and it was Graffius who kept all profits and paid all losses arising from the business, paying to Independent for purchase of its products certain prices to be arrived at under formulas set forth in the agreement.

It is appellees' position that, on the basis of the Dealer's Agreement together with the fact that on frequent occasions representatives of Independent visited the gasoline service station,[6] the question whether or not the relationship between Independent and Graffius was an employee-employer relationship was for determination by the jury, that such question had been properly presented to the jury and the jury had resolved it against Independent.

In ascertaining whether a person is an employee or an independent contractor,[7] the basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged: *Joseph v. United Workers Association*, 343 Pa. 636, 639, 23 A. 2d 470; *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 486, 70 A. 2d 299. If the facts as to such relationship are in dispute, it is the function of a jury to determine the precise nature of the relationship between the parties: *Feller*, supra, at p. 486. However, where the facts are not in

---

[6] Proof is lacking as to what such representatives said or did on the occasion of their visits.

[7] When "an injury is done by a person exercising an independent employment the party employing him is not responsible to the person injured": *Fuller v. Palazzolo*, 329 Pa. 93, 105, 197 A. 225; *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 150, 151, 189 A. 2d 271.

dispute, the question of the relationship becomes one for determination by the court: *Joseph,* supra, p. 639; *Feller,* supra, p. 486; *Johnson v. Angretti,* 364 Pa. 602, 607, 73 A. 2d 666.

The hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result: *Feller,* supra, at p. 486, and cases therein cited.

In the case at bar, the record shows that frequently Independent's representatives visited the gasoline service station but there is no evidence that, in so doing, such representatives gave any suggestions or instructions or exercised any control as to the manner of operating the gasoline service station. Such visits to the gasoline service station by Independent's representatives in no manner indicated any right of control by Independent and are not in any sense pertinent on the question of the nature of the relationship between Independent and Graffius: *Hader v. Coplay Cement Manufacturing Co.,* 410 Pa. 139, 152, 153, 189 A. 2d 271; *Murrin v. Rifugiato,* 373 Pa. 561, 565, 96 A. 2d 865.

The sole evidence of the relationship between Independent and Graffius is the Dealer's Agreement. Since the terms of such agreement are not in dispute and since the interpretation and construction of that agreement determines the relationship between the parties, it was the function of the court, not the jury, to determine the relationship between Independent and Graffius. Appellees' principal contention is that Independent had the right to terminate the agreement without cause and, relying on *Feller,* supra, p. 486,

such right on Independent's part gave Independent the "right to control" Graffius, thus making the latter an "employee" and not an "independent contractor". Appellees misread Paragraph 16 of the agreement as well as *Feller,* supra. Paragraph 16 gives to Independent the right of contract termination if Graffius defaults on his undertakings under the agreement; such termination is not "without cause". Furthermore, the power "to terminate the relationship at any time with or without cause" is not under *Feller,* supra, the *sole* consideration, albeit "an extremely important consideration" in determining whether the person employed is an independent contractor or an employee. An examination of the instant agreement *in its entirety* indicates clearly and convincingly that the relationship between Independent and Graffius was that of independent contractee-contractor, not employer-employee. The court below, in submitting to the jury the question of the relationship of the parties under the undisputed facts, fell into error.

Under the instant factual circumstances, the jury could not impose liability upon Independent on the theory that, Graffius having committed a negligent act, Independent as Graffius' employer would be vicariously liable on the theory of respondeat superior.[8]

Our next inquiry is whether the instant record reveals negligence on the part of Independent which was a proximate cause of this accident. It is beyond question that Independent was the landlord and Graffius the tenant of the property. Unlike the situation in *Harris v. Lewistown Trust Co.,* 326 Pa. 145, 191 A. 34, involving simply an agreement or promise to repair on the part of the landlord, Independent did undertake to repair the hoist located in this gasoline

---

[8] Other jurisdictions have passed upon the relationship of an oil company and a gasoline dealer: 83 A.L.R. 2d 1276 and cases therein cited.

station. It is well established that "a landlord undertaking to repair the premises leased, and repairing them negligently thereby causing injury, is liable for his tort [citing cases]": *Harris,* supra, at p. 148.

The instant record reveals that Independent undertook to repair the hoist in the gasoline station and that, after repairs were made to such hoist, oil continued to leak on the floor. Assuming, arguendo, that Independent failed to properly repair this hoist with the result that oil continued to leak on the floor and assuming that such constituted negligence, was such negligence on Independent's part a proximate cause of the injury? The court below in its opinion stated, inter alia: "The evidence indicates it was this [kerosene-gasoline] mixture that caused the fire to occur with such rapidity throughout the room rather than the oil which leaked from the hoist. Graffius, Sr. further testified that the gasoline-kerosene mixture was commonly used to clean floors in service stations, and that such would have been used, without respect as to whether or not oil did leak from the hoist; so that the leaking oil could not, under the evidence, be held as having any causal relation to the fire; the sole cause thereof being the use of the kerosene-gasoline mixture, under the supervision and direction of Graffius, Sr." We believe that this view of the court below was essentially sound.

In *DeLuca v. Manchester Laundry and Dry Cleaning Co.,* 380 Pa. 484, 488, 491, 112 A. 2d 372, Chief Justice STERN stated: "Ordinarily the question whether the negligence of a defendant is a proximate cause of the accident is for the fact-finding tribunal [citing case], but where the relevant facts are not in dispute and the remoteness of the causal connection between defendant's negligence and plaintiff's injury clearly appears from the evidence the question becomes one of law and, as such, is within the scope of appellate re-

view [citing numerous cases]". ". . . [A]ssuming arguendo, that the Laundry Company was guilty of a violation of the provisions of the statute and therefore negligent per se, such negligence was not a ground of liability unless it was the proximate and efficient cause of the accident in question [citing cases]. This is because an act of negligence which creates merely a passive background or circumstance of an accident does not give rise to a right of recovery if the accident was in fact caused by an intervening act of negligence which is a superseding cause [citing cases]." In *Kline v. Moyer and Albert,* 325 Pa. 357, 364, 191 A. 43, the Court stated: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tortfeasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." See also: *Rodgers v. Yellow Cab Co.,* 395 Pa. 412, 147 A. 2d 611.

Graffius was fully aware of the oil leakage on the service room floor created by Independent's alleged failure to adequately repair the hoist. Despite such knowledge, Graffius proceeded to clean the floor using a highly volatile and inflammable mixture of gasoline, kerosene and soap. The record reveals that the testimony of a recognized expert in fuel and combustion and of all the witnesses to this tragedy points to the use of this mixture as that which ignited and caused the fatal fire. Assuming that Independent was negligent in its failure to properly repair the hoist, such negligence formed merely a passive background for Graffius' negligent act which caused and produced this fire. Under the circumstances, while the question of whether or not Graffius was negligent in using this mixture to clean the floor was properly left to the

jury, the question whether Independent's negligence in failing to properly and adequately repair the hoist was a proximate cause of the accident presented a question for the court and not for a jury.

Since Independent could not be held vicariously liable for any act of negligence on the part of Graffius and since any negligence on the part of Independent was not a proximate cause of the fire which caused the instant deaths, the court below should have entered judgments n.o.v.

In view of the conclusion reached, it is unnecessary to consider Independent's motion for a new trial.

Judgments reversed.

Mr. Justice MUSMANNO dissents.

Mr. Justice EAGEN dissents and would grant a new trial on the ground the charge was inadequate.