Fern TAYLOR

v.

COSTA LINES, INC., and Alstons Shipping and Travel, Ltd.

Civ. A. No. 76–3183.

United States District Court, E. D. Pennsylvania.

Dec. 2, 1977.

Frank L. Tamulonis, Pottsville, Pa., for plaintiff.

Andrew C. Hecker, Jr., Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendant Costa Lines, Inc. ("Costa"), has moved for summary judgment in this personal injury case on two grounds. First, Costa asserts that there was no legal relationship between Costa and Alstons Shipping and Travel, Ltd. ("Alstons"), whose employee's negligence allegedly was responsible for plaintiff's injury, sufficient to hold Costa liable. Second, Costa maintains that an exculpatory clause in its promotional literature and on the ticket purchased by plaintiff bars plaintiff's recovery. We will deny defendant's motion for summary judgment on both grounds.

Plaintiff purchased a ticket from Costa for an air-sea package tour. On August 9, 1975, plaintiff flew from Baltimore to San Juan, Puerto Rico. In San Juan she boarded the *Carla C*, a vessel owned by Costa, en route to Curacao, Caracas, Trinidad, Martinique and St. Thomas.

At Trinidad, plaintiff purchased a ticket on board the *Carla C* for an automobile tour of the island, sponsored by Alstons. While plaintiff was traveling in a taxicab owned and operated by Alstons, the cab left the road and struck a tree, resulting in a concussion and other injuries to plaintiff. Plaintiff alleges that the negligence and recklessness of Alstons' employee in the operation of the vehicle permit her to hold Costa vicariously liable, on the theory that Alstons acted as Costa's servant when it transported Costa's passengers on Trinidad.

## I. *RESPONDEAT SUPERIOR:*

In examining the nature of the relationship between Costa and Alstons, we must view the evidence most favorably to plaintiff and resolve all inferences in her favor. *Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870 (3d Cir. 1972). Plaintiff's affidavit and exhibits disclose a close working relationship between the two companies. Costa's promotional literature mentioned "well-planned shore excursions" at each port of call, and at another point described Alstons as a "port agent". Near each port,

including Trinidad, Costa's entertainment directors announced the tour; tour information was posted and tickets were sold on board the *Carla C.* Costa had told Alstons it would give Alstons all its Trinidad shore tour business, and immediately before the *Carla C* reached Trinidad, Costa personnel announced, advertised and sold tickets for only the Alstons' tour. The tickets for the shore excursion had "Costa Lines, Inc." printed on one side. Plaintiff has also submitted an exchange of letters between Costa and Alstons executives, in which Costa agreed to give Alstons all the Trinidad shore tour business from its ships and Alstons acknowledged receipt of the letter from Costa.

Costa's liability could be based on either of two legal theories: a real master-servant relationship between Costa and Alstons, and Costa's representation that Alstons was its servant. We will examine these in turn.

### A. MASTER–SERVANT RELATIONSHIP

Under the doctrine of *respondeat superior*, a master is liable for the torts of his servants committed while they are acting in the scope of their employment, but a principal generally has no liability for the torts of independent contractors. *Restatement (Second) of Agency* §§ 219, 250 (1957). The Pennsylvania courts have delineated on several occasions the perimeters of the master-servant relationship. It is true that the existence of such a relationship in each case "must be decided on its own facts [and] the existence of all or some of the factors discussed in the . . . cases is not necessarily controlling," *George v. Nemeth*, 426 Pa. 551, 554, 233 A.2d 231, 233 (1967). Nonetheless, the Pennsylvania Supreme Court has laid down a general principle in *Green v. Independent Oil Co.*, 414 Pa. 477, 484, 201 A.2d 207, 210 (1964):

"[T]he hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-con-

tractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result." (citation omitted)

The distinction between master-servant (or "employer-employee") and independent contractee-contractor thus turns on the master's right to control the work done by the servant. *Accord, Restatement (Second) of Agency* § 220 (1957).

Plaintiff contends that there is a factual issue as to whether a master-servant relationship existed between Costa and Alstons. She argues one could be inferred on the basis of "the totality of the circumstances"—*i. e.*, the intimacy between the two companies described above. It is true that plaintiff does not allege directly those facts establishing Costa's right to control Alstons which are necessary to constitute a master-servant relationship. We hold, however, that the cumulative effect of plaintiff's evidence would permit a finder of fact to infer that Costa had the right to control the conduct of Alstons' work. In particular, Costa's advertisement of "well planned shore excursions", with no specification of who planned them, permits the inference that Costa did. This inference becomes even stronger when the presence of Costa's name on the tickets for the tour is considered. We cannot say at this time that a jury could not infer from these and other facts that Costa had the right to direct the manner in which the tour would be conducted, or, in other words, that a master-servant relationship existed.

Costa has produced an affidavit from its secretary stating that Costa neither determined the manner in which the shore tours were conducted, chose the tour's equipment or personnel nor set the prices for the tours. While these facts are not directly disputed, we note first that they assert only that Costa never *exerted* any control over Alstons, not that Costa had no right to control. Thus, like plaintiff's evidence, this evidence leaves to inference the crucial factor of *right* to control. Second, if this proof were presented in the form of oral evidence

at trial, the finder of fact would be free to disregard it as not credible. Plaintiff's evidence would then stand alone and would be sufficient to support a reasonable inference that a master-servant relationship existed.

## B. APPARENT AUTHORITY

■ Plaintiff's principal theory is that Costa is liable for Alstons' alleged negligence because of either apparent authority or agency by estoppel.[1] The *Restatement (Second) of Agency* states in § 267:

"One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

The applicability of this section to Pennsylvania agency law appears to be a matter of first impression, but we conclude that Pennsylvania would follow section 267 for two reasons: the Pennsylvania Supreme Court's customary adherence to the *Restatement* and the unanimous adoption of section 267 by those courts, including the Third Circuit, which have addressed the issue. *Gizzi v. Texaco, Inc.*, 437 F.2d 308 (3d Cir. 1971).

■ Costa could be liable under this theory if the plaintiff demonstrated that: (1) Costa represented that Alstons was its servant;[2] (2) plaintiff relied on Alstons' skill as a result of that representation; and (3) such reliance was justifiable.

■ In this case, nearly all of the plaintiff's averments tending to establish that a master-servant relationship in fact existed allege acts by Costa which were known to the plaintiff. Most of them form the basis for our conclusion that there are issues of

fact as to the existence of an actual master-servant relationship. Obviously, if it would be reasonable for a jury to conclude that Alstons was in fact the servant of Costa, it is inescapable that a jury could quite properly find on substantially the same evidence that it would be equally reasonable for plaintiff to reach this same conclusion. The requirement of plaintiff's reliance on Alstons' skill and care as a result of the alleged representation can be inferred from statements in plaintiff's affidavit to the effect that she believed Alstons was acting as Costa's agent.

A jury finding that such a relationship existed in fact would have to consider all the evidence, including Costa's allegation that it never exerted any control over Alstons as well as the facts from which plaintiff alleges she inferred Alstons was Costa's servant. However, in considering the sufficiency of the representations and the reasonableness of plaintiff's reliance, Costa's averments are irrelevant, since there is no allegation that plaintiff was at the time of her reliance aware of the facts now alleged by Costa.

Hence, the jury might well conclude on the totality of the evidence that Costa never exerted any control over Alstons' work, and from this reasonably infer that Costa had no right to control and hence no master-servant relationship in fact existed. The same jury, however, could consistent with those findings conclude, on the basis of what the plaintiff observed, that she relied reasonably on an apparent master-servant relationship. Of course, if a jury concluded on the strength of plaintiff's evidence that a master-servant relationship did exist, *a fortiori* it could conclude that Costa is liable because all the elements of section 267 are satisfied. Because factual issues exist as to

---

1. Both apparent authority and agency by estoppel raise the same factual issues and seem to be virtually indistinguishable. *Restatement (Second) of Agency*, §§ 8, 8B, 267 (1957). *See also University Marketing and Consulting, Inc. v. Hartford Life & Accident Ins. Co.*, 413 F.Supp. 1250, 1261 (E.D.Pa.1976). Because we conclude that a jury question exists as to Cos-

ta's liability under apparent authority, we need not discuss agency by estoppel.

2. We need not consider the meaning of the phrase "or other agent" in section 267. Our conclusion that Costa might be liable under the doctrine of apparent authority is based upon Costa's alleged representation that Alstons was its servant.

both a real and an apparent master-servant relationship, we will deny Costa's motion for summary judgment on this ground.

## II. EXCULPATORY CLAUSE:

Costa moves for summary judgment on the independent ground that the pamphlets advertising the *Carla C* cruise and the ticket for the Trinidad shore tour both provided that Costa has no liability for injuries to passengers caused by defects in any vehicle or by the neglect or fault of any operator of a vehicle. While it is true that Pennsylvania contract law does not condemn exculpatory clauses in all cases, it does place narrow limits on both their permissibility and construction.

A clause purporting to immunize a contract party from liability for negligence is valid only if, *inter alia*, it is not in effect "a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely." *Employers Liability Assurance Corp., Ltd. v. Greenville Business Men's Ass'n*, 423 Pa. 288, 292, 224 A.2d 620, 623 (1966), quoting *Galligan v. Arovitch*, 421 Pa. 301, 304, 219 A.2d 463 (1966). Since there remain factual issues relevant to the determination of the validity of the exculpatory clause, including whether the plaintiff had an alternative to rejecting the cruise entirely or taking it subject to the exculpatory provision, we will deny the motion for summary judgment on this ground. In so doing, we do not reach the issue of how the alleged exculpatory clause would be construed if it were deemed valid.