627 A.2d 806

**S. Allen SCHREIBER, Appellant,**

v.

**OLAN MILLS, Appellee.**

Superior Court of Pennsylvania.

Argued April 15, 1993.

Filed July 12, 1993.

538

Douglas P. Yauger, Pittsburgh, for appellant.

Thomas W. Kirby, Washington, DC, for appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

We are asked to review the appeal of the order of September 15, 1992, granting the preliminary objections in the nature of a demurrer of the defendant, Olan Mills, and dismissing the complaint of the plaintiff/appellant, S. Allen Schreiber. We affirm.

On appeal from an order sustaining preliminary objections in the nature of demurrers, this Court is concerned only with determining the legal sufficiency of the appellant's complaint. *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443, 445 (1969). We must confine our analysis to the complaint and decide whether sufficient facts have been pleaded which would permit recovery if ultimately proven. *Id.; D'Antona v. Hampton Grinding Wheel*, 225 Pa.Super. 120, 310 A.2d 307 (1973).

We begin our analysis with the observation that the defendant, a Tennessee-based corporation, operates a nationwide chain of family portrait studios. In securing business, the defendant relies heavily upon "telemarketing". This practice of soliciting customers, because of the compelling quality of the telephone as a desirable medium for disseminating information, has spawned a rapidly growing billion dollar industry which includes "telemarketing", phone surveying and soliciting by phone. Nadel, Mark S., *Rings of Privacy: Unsolicited Telephone Calls and the Right of Privacy*, 4 Yale J. on Reg. 99 (1986).

Instantly, a representative of the defendant phoned the plaintiff on November 29, 1989, the result of which prompted the following letter:

Mrs. Linda Borelli

Olan Mills

547 Clairton Blvd.

Pittsburgh, Pa. 15236

Dear telemarketer:

Today, you called us attempting to sell a product or a service. We have no interest in the product or service that

you are selling. Please don't call us again. Please remove us from your telemarketing list and notify the provider of the list to also remove our name and number since we do not appreciate receiving telemarketing phone calls.

We rely on the availability of our phone lines which have been installed for our convenience and not for the convenience of telemarketers. We pay for these phone lines and instruments. You do not. Please don't tie up our phone lines.

Should we receive any more phone calls from you or from anyone connected with your firm of a telemarketing nature, we will consider that you have entered into a contract with us for our listening services and that you have made those calls to us and expect us to listen to your message on a "for hire" basis.

If we receive any additional telemarketing phone calls from you, you will be invoiced in accordance with our rates which are $100.00 per hour or fraction thereof with a $100.00 minimum charge. Payment will be due on a net seven (7) day basis.

Late payment charge of 1-1/2% per month or fraction thereof on the unpaid balance subject to a minimum late charge of $9.00 per invoice per month or fraction thereof will be billed if payment is not made as outlined above. This is an annual percentage rate of 18%. In addition, should it become necessary for us to institute collection activities, all costs in connection therewith including, but not limited to, attorney fees will also be due and collectible.

Thereafter, two phone contacts caused the plaintiff to bill the defendant for services, which, when not paid, resulted in the institution of a suit to collect $479.00 in fees.[1] Preliminary objections were filed by the defendant in which it argued that the facts alleged in the complaint did not show an intent, on the part of either party or their representative, to enter into a contract.

1. The plaintiff's suit was commenced as a breach of contract action in the arbitration division of the Court of Common Pleas.

The court concluded from a review of the record and law that the parties did not enter into a contract for the purchase of the plaintiff's "listening services." Not only did the court find that there was "no true and actual meeting of the minds," but, under the circumstances, there was no " 'ordinary course of dealing and the common understanding of men[ ] show[ing] a mutual intention to contract.' " Lower Court Opinion at 3, citing *Ingrassia Construction Co. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478, 483 (1984). Thus, the defendant's preliminary objections were granted and this appeal followed.

The sole issue we need to concern ourselves with, in disposing of the case at bar, is whether a binding contract was effectuated between the parties so as to obligate the defendant to pay the plaintiff for his "listening-for-hire" services.

■ The elemental aspects necessary to give rise to an enforceable contract are "offer", "acceptance", "consideration" or "mutual meeting of the minds." *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A.2d 127, 128 (1940); *United Mercantile Agencies, Inc. v. Slotsky*, 121 Pa.Super. 1, 182 A. 788, 789 (1936); *Com. of Pa., Dept. of Trans. v. First Pennsylvania Bank, N.A.*, 77 Pa.Cmwlth. 551, 553, 466 A.2d 753 (1983); *Restaurant Associates Industries, Inc. v. Anheuser–Busch, Inc.*, 397 F.Supp. 1213, 1217 (1975); 17A Am.Jur.2d, §§ 16–21 (1991).

■ Further, when seeking to enforce an agreement, one may look to the "conduct" of the parties to ascertain the acceptance of the agreement. A panel of this Court, when confronted with the question of whether "conduct" is sufficient to constitute "acceptance" of an "offer" for services provided, has held:

It is settled that for an agreement to exist, there must be a "meeting of the minds," . . .; the very essence of an agreement is that the parties mutually assent to the same thing, . . . . The principle that a contract is not binding unless there is an offer and an acceptance is to ensure that there will be mutual assent. . . .

Notwithstanding the aforesaid, it is equally well-established that "an offer may be accepted by conduct and what the parties d[o] pursuant to th[e] offer" is germane to show whether the offer is accepted.

*Accu–Weather, Inc. v. Thomas Broadcasting Co.*, 425 Pa.Super. 335, 625 A.2d 75 (1993) (Slip Opinion at 5–6) (Citations omitted).

■ Instantly, it is evident from the tenor of the plaintiff's communique to the defendant that it was in the nature of a "cease and desist" request rather than an "offer" to "listen . . . 'for hire' " to the solicitations of the defendant. As observed by the court on this point:

The sole purpose of the November 29, 1989 letter was to encourage Olan Mills to remove plaintiff from its calling lists—and not to solicit a purchaser for "listening services." The sole purpose of any additional calls that Olan Mills made to plaintiff was to solicit orders—and not to obtain "listening services." Consequently, as a matter of law the parties did not enter into a contract.

Lower Court Opinion at 3. We agree.

It is axiomatic that before a contract may be found, *all* of the essential elements of a contract must exist, e.g., consideration. *First Pennsylvania Bank, N.A.,* supra. There obviously can be no bargained-for-exchange ("consideration") if one of the parties acts without any intention of binding itself to a contract for "listening services." There was no "unconditional" manifestation on the part of Olan Mills or its representative that a contract was acknowledged by behavior of the defendant.

Unlike *Accu–Weather, Inc.,* supra, at bar there was no "offer", "acceptance", "consideration" or "mutual meeting of the minds" to effectuate the elemental aspects of a contract. See 17A Am.Jur.2d, §§ 16–21 (1991).

Order affirmed.