POPOVICH, Judge:
 

 This is an appeal from the order of September 21, 1993, entered in the Court of Common Pleas of Franklin County
 
 *223
 
 sustaining the preliminary objections of appellee (“Exxon”) and dismissing appellant’s complaint. We are presented with the question of whether the lower court erred in determining that, as a matter of law, Exxon owed no duty to appellant. Upon review, we affirm.
 

 The record reveals that on August 1, 1989, appellant was assaulted and raped by Gerald Daniels while working the nightshift at the Blue Chip Mini-Mart in Greencastle, Pennsylvania. Appellant filed two separate actions. First, appellant brought action against Gerald Daniels, Blue Chip Mini-Mart, Blue Chip Fuels, Oliver Oil Company, Inc. (“Oliver Oil”), and Richard Sterner. Oliver Oil was the parent company of Blue-Chip Mini-Mart and Blue Chip Fuels. Richard Sterner owned and operated the shopping center on which the mini-mart was located. Second, appellant filed suit against Exxon.
 
 [1]
 
 Exxon had entered into a distributor agreement (“the Distributor Agreement”) with Oliver Oil in 1988 to supply gasoline to the mini-mart. Appellant alleged that Exxon was negligent in failing to implement and maintain security measures against criminal activities on the mini-mart’s premises. On July 13, 1993, Exxon filed preliminary objections in the nature of a demurrer, averring that it owed no legal duty to appellant. After hearing oral arguments on September 2, 1993, the lower court entered an order dated September 21, 1993, which sustained Exxon’s preliminary objections and dismissed appellant’s complaint against it.
 
 [2]
 
 This appeal followed.
 

 Herein, appellant contends that she pleaded sufficient facts in her complaint to establish that Exxon owed a legal duty to her and that the lower court thus erred in sustaining Exxon’s preliminary objections in the nature of a demurrer. Appellant argues that Exxon exercised control over Oliver Oil’s opera
 
 *224
 
 tion of the mini-mart and owed her a duty to provide security against criminal activity on the premises.
 

 Our scope of review from an order which sustains preliminary objections in the nature of a demurrer is plenary.
 
 Solomon v. Gibson,
 
 419 Pa.Super. 284, 286-88, 615 A.2d 367, 368 (1992),
 
 citing, Kyle v. McNamara & Criste,
 
 506 Pa. 631, 487 A.2d 814 (1985). “[TJhis Court is concerned only with determining the legal sufficiency of the appellant’s complaint.”
 
 Schreiber v. Olan Mills,
 
 426 Pa.Super. 537, 627 A.2d 806 (1993),
 
 citing, Schott v. Westinghouse Electric Corp.,
 
 436 Pa. 279, 259 A.2d 443, 445 (1969). “We must confine our analysis to the complaint and decide whether sufficient facts have been pleaded which would permit recovery if ultimately proven.”
 
 Schreiber,
 
 426 Pa.Super. at 537, 627 A.2d at 806,
 
 citing, D’Antona v. Hampton Grinding Wheel, 225
 
 Pa.Super. 120, 310 A.2d 307 (1973). A granting of a demurrer is warranted if the lower court correctly determines that, “taking as true all properly pleaded material facts and disregarding all pleaded conclusions of law, under no circumstances will the law permit recovery on the complaint.”
 
 Cavaliere v. Duff’s Business Institute,
 
 413 Pa.Super. 357, 362, 605 A.2d 397, 400 (1992),
 
 citing, Pawlowski v. Smorto,
 
 403 Pa.Super. 71, 588 A.2d 36 (1990);
 
 Doe v. Dyer-Goode,
 
 389 Pa.Super. 151, 566 A.2d 889 (1989),
 
 appeal denied,
 
 527 Pa. 587, 588 A.2d 509 (1990).
 

 Against the backdrop of the foregoing authorities, we proceed in our examination of appellant’s complaint. Appellant provides the following allegations in the complaint to buttress her contention that Exxon exerted control over Oliver Oil and owed her a duty to provide security on the mini-mart’s premises:
 

 11. The Defendant, Oliver Oil Company, Inc., which owns the Defendant, Blue Chip Mini-Mart, located on Molly Pitcher Highway has an exclusive agreement with the Defendant, Exxon Company U.S.A., to sell only Exxon gasoline products. The agreement also requires Oliver Oil to submit a plan to Exxon which concerns sales, operations and safety aspects of the facility including, selection of the site, development of appropriate facilities, and effective operating
 
 *225
 
 practices. Exxon had the sole discretion to accept or reject said plan. Exxon further required that Oliver Oil plan specific facility designs, which Exxon could except [sic] or reject----
 

 12. The Defendant, Exxon, requires Oliver Oil to keep the Blue Chip Mini-Mart open 24 hours a day in order to meet contractually specific quotas.
 

 13. That Defendant, Exxon, required Defendant, Oliver Oil, to develop a plan of effective operating practices which Exxon had discretion to accept or reject.
 

 14. That Defendant, Exxon, at all relevant times, had control over Oliver Oil and Blue Chip Mini-Marts and their employees and agents, as well as the premises in question, by virtue of the Distribution Agreement and plan of operation, which they required from Defendant, Oliver Oil.
 

 * H*
 
 *
 
 *
 

 16. That Defendant, Exxon, required Defendant, Oliver Oil, to develop a plan to optimize effective and efficient distribution and representation of Exxon motor fuel, which Exxon had discretion to accept or reject.
 

 17. That Defendant, Exxon’s agreement with Defendant, Oliver Oil, necessarily involved and provided or should have involved or provided for implementing and maintaining plans to carry out the safeguarding of patrons, workers and employees of Defendants, including but not limited to, the Plaintiff, Debbie Smith.
 

 18. That Exxon and Oliver Oil, pursuant to the Distribution Agreement and requirements therein, undertook a duty with Oliver Oil to patrons of Blue Chip Mini-Marts, as well as employees working within said mini-marts to provide for their safety and well-being while at said premises, including but not limited to, safety and protection from robbers, thieves, assailants, rapists and other undesirables.
 

 19. That it was at all relevant times foreseeable by Defendants that employees, such as and including Plaintiff herein, Debbie Smith, would need protection from the aforementioned individuals in carrying out her responsibilities in the
 
 *226
 
 employment of Oliver Oil, Blue Chip Mini-Marts and Blue Chip Oil in carrying out the sales and operation plans as specified by Exxon.
 

 45. That Exxon required and did display their name and logo on various signage [sic] in and about the Blue Chip Mini-Mart.
 

 ' ‡ ‡ H* ‡ ‡
 

 46. Defendant, Exxon, required Defendants, Oliver Oil and Blue Chip Mini-Marts to supply certain services and facilities in connection with the selling of Exxon products.
 

 ‡ if: iH ^ Hi Hi
 

 49. Exxon, as the franchisor, had a non-delegable duty, which included but was not limited to, issuing guidance and setting requirements for the use or installation of security devices, measures and procedures to ensure that its franchise, Oliver Oil and Blue Chip Mini-Marts exercised reasonable care to protect business invitees, attracted to trade under Exxon’s name and logo, and employees of Oliver Oil, including Plaintiff, Debbie Smith, against an unreasonable risk of harm from reasonably anticipated criminal activities in and around the stores which it did business.
 

 R.R. “Complaint” at 3-5, 9-10.
 

 Upon analysis of the complaint, the lower court determined that appellant failed to plead sufficient facts which would permit recovery. The court below found that appellant’s averments were unfairly representative of the provisions of the Distributor Agreement and were unjustified conclusions of law. Trial Opinion 12/7/93 at 5-6. Appellant maintains that Exxon’s duty to her stems from the terms provided in the Distributor Agreement.
 
 [3]
 
 Paragraphs 17 and 18 of appellant’s
 
 *227
 
 complaint state that the Distributor Agreement obligated Exxon to provide security measures to patrons and workers of the mini-mart. Appellant fails to direct us to any such provision in the the Distribution Agreement. Moreover, after scrutinizing the language of that agreement, we are convinced that no such duties were expressly or even implicitly provided. Paragraph 12 of appellant’s complaint avers that Exxon required Oliver Oil to keep the mini-mart open twenty-four (24) hours a day. The Distributor Agreement, however, imposes upon Oliver Oil the duty to operate its mini-mart during such hours which are “reasonable considering customer convenience, competitive conditions and economic consequences to [Oliver Oil].” R.R. “Distribution Agreement” at ¶ 14(d). Paragraph 45 of appellant’s complaint alleges that Exxon required its name and logo at the Blue Chip Mini-Mart. The Distribution Agreement does not require but “permits” Oliver Oil to display Exxon’s trademarks at the mini-mart provided that any such display meets Exxon’s guidelines for preserving trademark identification. R.R. “Distribution Agreement” at ¶ 11.
 
 *228
 
 Paragraphs 14, 19 and 49 of appellant’s complaint plead legal conclusions.
 

 “In the context of a demurrer, ... it is not necessary to accept as true averments in the complaint which are in conflict ■with the exhibits attached to the complaint.”
 
 Philmar Mid-Atlantic v. York Street Assoc.,
 
 389 Pa.Super. 297, 299-301, 566 A.2d 1253, 1254 (1989),
 
 citing, Schuylkill Prod. v. H. Rupert & Sons, Inc.,
 
 305 Pa.Super. 36, 39 n. 2, 451 A.2d 229, 231 n. 2 (1982);
 
 Framlau Corp. v. Delaware County,
 
 223 Pa.Super. 272, 277, 299 A.2d 335, 338 (1972). Moreover, conclusions of law pleaded in the complaint are to be disregarded by the court.
 
 Cavaliere v. Duff's Business Institute,
 
 413 Pa.Super. at 361-62, 605 A.2d at 400. Our examination of the Distributor Agreement leads us to find that numerous averments in the complaint unfairly represented the provisions of the agreement and improperly contained legal conclusions.
 

 We find that the analysis espoused by our Supreme Court in
 
 Green v. Independent Oil Company,
 
 414 Pa. 477, 201 A.2d 207 (1964) provides guidance herein. In
 
 Green,
 
 414 Pa. 477, 479-480, 201 A.2d 207, 208-209, customers at a gasoline service station were killed on the premises when fumes from a cleaning-solution applied to the garage floor by an employee ignited in the air. Suits were brought against Independent Oil Company (“Independent”) and Woodrow Graffius (“Graffius”). Independent owned the property and building of which Graffius leased and occupied. Further, Independent and Graffius entered into an agreement (“Dealers Agreement”) whereby Independent constituted Graffius as a dealer in . its products. At trial, the jury rendered verdicts against both defendants. Independent sought judgments n.o.v. on the ground that “the relationship between Independent and Graffius was that of independent contractee-independent contractor and, therefore, Independent had no vicarious responsibility on the theory of respondeat superior for negligence on Graffius’ part.”
 
 Id.
 
 at 481, 201 A.2d at 209.
 

 On appeal to the Pennsylvania Supreme Court, our highest court held that the trial court committed an error of law in submitting to the jury the question of the relationship of the
 
 *229
 
 defendants and then denying Independent’s motions for judgments notwithstanding the verdicts. In arriving at that holding, our Supreme Court initially distinguished an employee-employer relationship from an independent contractee-contractor relationship as follows:
 

 [T]he basic inquiry is whether such person is subject to the alleged employer’s control or right of control with respect to his physical conduct in the performance of the services for which he was engaged----
 

 The hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result.
 

 Id.
 
 at 446-49, 201 A.2d at 201 (citations omitted).
 
 See Romanski v. Prudential Property & Casualty Ins. Co.,
 
 356 Pa.Super. 243, 514 A.2d 592 (1986) (plaintiff, a taxi driver, was found to be an independent contractor not subject to control by Yellow Cab).
 

 The Supreme Court then determined that the Dealers Agreement was the sole evidence of the relationship between Independent and Graffius.
 
 [4]
 
 In
 
 Green,
 
 our Supreme Court found the following terms of that agreement germane in determining that Independent lacked control over the manner in which the business of Graffius’ service station was conduct
 
 *230
 
 ed: 1) Graffius would maintain and repair the buildings and other facilities on the property. 2) Independent would lend equipment to Graffius for the storage and sale of its products. 3) Graffius would purchase all motor oils and fuel from Independent. 4) Graffius would pay all utility charges, taxes and other expenses and secure all governmental licenses and permits for conducting the business. 5) Graffius would not hold himself as an agent of Independent and shall conduct all business in Independent’s products in Graffius’ name thus displaying his own name on the premises. 6) Independent would have the right to terminate the agreement at any time by written notice to Graffius or suspend deliveries during such default.
 
 Id.
 
 at 480-82, 201 A.2d at 209-210. In construing the terms of the Dealers Agreement in its entirety, the Court concluded that the relationship was clearly and convincingly one of an independent contractee-contractor rather than an employer-employee.
 
 Id.
 
 at 484-86, 201 A.2d at 211.
 

 Here, unlike Independent in
 
 Green,
 
 Exxon does not own the building or the property on which the mini-mart conducts its business. Instead, Exxon merely distributes gasoline and motor oil to the mini-mart. Appellant asserts, however, that the Distributor Agreement imposes the following duties upon Oliver Oil thus giving Exxon control over Oliver Oil’s operation of the mini-mart: 1) Oliver Oil would provide qualified and neatly dressed attendants with appropriate uniforms as well as keep the rest rooms clean, orderly and sanitary and to render appropriate, prompt, efficient and courteous service to Exxon customers including responding to customer complaints. R.R. “Distributor Agreement” at ¶ 14. 2) Oliver Oil would allow Exxon the right to sample at any time the gasoline stored in tanks of Oliver Oil. R.R. “Distributor Agreement” at ¶ 11. 3) Should Oliver Oil choose to display Exxon trademarks, Oliver Oil would have to use the trademarks in a certain fashion, protect their identity from non-Exxon products and submit to several courses of action if the trademarks were misused. R.R. “Distributor Agreement” at ¶ 11. 4) Oliver Oil would be required to comply with a marketing plan to optimize effective distribution of gasoline to
 
 *231
 
 which plan Exxon would agree to provide comments. R.R. “Distributor Agreement” at ¶ 12.
 
 [5]
 

 Recently, our Court in
 
 Myszkowski v. Penn Stroud Hotel, Inc.,
 
 430 Pa.Super. 315, 634 A.2d 622 (1993), was presented with facts and issues similar to those of the instant case. In that case, a campus ministry group contracted with Penn Stroud Hotel, Inc. (“Penn Stroud”), t/a Best Western Pocono Inn of Stroudsburg, to use its ballroom for a social function. The plaintiff, a disc jockey performing at that function, was attacked and sexually assaulted in the ladies’ restroom at the inn. The plaintiff brought suit against Best Western International, Inc. (“Best Western”) and Penn Stroud. Penn Stroud and Best Western were in a marketing agreement whereby Penn Stroud was a member of the Best Western organization which allowed it to use the “Best Western” name and participate in the Best Western reservation network. Similar to this case, at issue was whether Best Western exercised control over Penn Stroud’s operation of the inn and owed the plaintiff a legal duty to ensure adequate security of the premises. Best Western moved for summary judgment on the ground that, as a matter of law, an agency relationship did not exist between itself and Penn Stroud. The trial court granted summary judgment in favor of Best Western and the plaintiff appealed.
 
 Id.
 
 at 317-19, 634 A.2d at 624.
 

 On appeal to our Court, the plaintiff in
 
 Myszkowski
 
 contended that Best Western had the right to control Penn Stroud substantially pursuant to their marketing agreement. The plaintiff asserted, “Best Western concerns itself with the total operation of Penn Stroud through the workshops and programs it conducts, the rules and regulations it imposes and its ability to sanction for noncompliance with its quality standards.”
 
 Id.
 
 at 320, 634 A.2d at 625. Applying our Supreme Court’s analysis in
 
 Green
 
 to the facts, our Court in
 
 Myszkowski
 
 determined that the relationship between Best Western and Penn Stroud was one of an independent contractorcontractee rather than a master-servant.
 
 Id.
 
 at 320-321, 634
 
 *232
 
 A.2d at 625-627. The focus of our Court’s inquiry was whether Best Western had day-to-day control over the manner of Penn Stroud’s performance. We rejected the plaintiffs argument that Best Western had control over the operations of the inn by virtue that it could terminate Penn Stroud’s right to use the Best Western tradename.
 
 Id.
 
 at 321-23 n. 4, 323-25, 634 A.2d at 626 n. 4, 627. There, our court found, “the fact that Best Western sets certain standards in order to maintain a uniform quality of inn service only addresses the
 
 result
 
 of the work and not the
 
 manner
 
 in which it is conducted.”
 
 Id.
 
 at 324, 634 A.2d at 626. We concluded that Best Western was not vicariously liable for the alleged negligence of Penn Stroud.
 
 Id.
 
 at 325-329, 634 A.2d at 628-630.
 

 In light of the
 
 Green
 
 and
 
 Myszkowski
 
 decisions, we address the pivotal question of whether Exxon controlled or retained the right to control the
 
 manner
 
 in which Oliver Oil’s operation of the mini-mart was conducted. In
 
 Myszkowski,
 
 the marketing agreement afforded quality control requirements for the protection of Best Western’s tradename and services. The Distributor Agreement herein provides similar provisions for the purpose of preserving the integrity of Exxon’s trademark and the quality of its gasoline, i.e., samples taken from tanks. As in
 
 Myszkowski,
 
 here, standards were implemented to maintain a uniform quality of service. We are of the opinion that the standards concerning the appearance of personnel and restrooms and the response to customer complaints do not amount to Exxon having control over the manner in which the work is accomplished. Under the guidance of our Court’s decision in
 
 Myszkowski,
 
 we also reject appellant’s assertion that a marketing plan, as mentioned in ¶ 12(a)(1) of the Distributor Agreement, is indicative of Exxon’s control over Oliver Oil’s business. In comparison to the facts in
 
 Myszkowski,
 
 we find that Exxon’s involvement in the operation of Oliver Oil’s mini-mart is exponentially less than Best Western’s involvement with the operation of Penn Stroud. There, the circumstances reveal that Penn Stroud’s inn was engaged exclusively in hotel services. The inn obtained guidance from Best Western on how to conduct its business through regulations, programs and workshops that
 
 *233
 
 were set up by Best Western. Here, on the other hand, Oliver Oil’s mini-mart is a convenience store and not merely a gas station. Exxon is only one of many suppliers of products to that store. The record is devoid of facts that even suggest that Exxon played a role in any day-to-day operational decisions of the mini-mart.
 

 Upon reviewing the language of the Distributor Agreement in its entirety, we are convinced that the duties imposed upon Oliver Oil by Exxon only addressed the
 
 result
 
 of the work and not the
 
 manner
 
 in which it was conducted. We find that the relationship between Exxon and Oliver Oil is one of independent contractor-contractee. Because Exxon neither controlled nor retained the right to control the manner in which Oliver Oil’s mini-mart operated, we conclude that Exxon owed no legal duty to appellant. We hold that the lower court properly determined that appellant’s complaint was legally insufficient to permit recovery. Accordingly, we affirm the lower court’s order sustaining the preliminary objections of Exxon and dismissing appellant’s complaint against it.
 

 Order affirmed.
 

 [1]
 

 . In July of 1991, a writ of summons was served on Exxon. In June of 1993, appellant filed the complaint.
 

 [2]
 

 . On October 6, 1993, appellant filed a motion for reconsideration of the order granting Exxon’s preliminary objections. That motion was denied by the court below on October 18, 1993. Notice of appeal was filed on October 21, 1993.
 

 [3]
 

 . Appellant argues that there is more evidence other than the Distribution Agreement that supports her contention that Exxon exerted control over Blue-Chip Mini-Mart and undertook a duty to protect the mini-mart’s patrons and workers. Appellant asserts that discovery would reveal more facts as to Exxon’s role in the mini-mart’s operations. The lower court dismissed that contention by finding that appellant had years to initiate discovery, yet failed to do so. The court determined
 
 *227
 
 that discovery at this stage would be a further waste to judicial economy. Trial Opinion 12/7/93 at 4-5.
 

 Appellant directs our court’s attention to ¶ 12(a)(1) of the Distributor Agreement. Appellant maintains that Oliver Oil prepared “a comprehensive market development plan” for Exxon, and that Exxon has not disclosed this plan to appellant. That document is not in the record. However, upon close review of the language of ¶ 12(a)(1) of the Distributor Agreement, we are of the opinion that such a plan would not establish that Exxon held control over the mini-mart’s operations.
 
 See Myszkowski v. Penn Stroud Hotel, Inc.,
 
 430 Pa.Super. 315, 634 A.2d 622 (1993) (marketing arrangement was not evident of the the type of day-to-day control over the manner of performance which would establish master-servant relationship). Nevertheless, we find that the lower court appropriately determined that appellant failed to exercise due diligence in discovery. In July of 1991, appellant issued a writ of summons on Exxon. In June of 1993, appellant filed the complaint. Pennsylvania Rules of Civil Procedure avails a plaintiff the opportunity to obtain discovery from the time the writ of summons is served for the purpose of preparing a complaint.
 
 See
 
 Pa.R.Civ.P. 4007.1(c).
 
 See generally,
 
 6 Standard Pennsylvania Practice 2d §§ 34:6, 34:7. Appellant had nearly two years to seek discovery to enable the drafting of the complaint. We find that appellant should bear the burden for her lack of diligence. Hence, we conclude the fate of her complaint’s viability hinges exclusively upon the terms of the Distributor Agreement rather than additional undiscovered evidence.
 

 [4]
 

 . To advance her contention that Exxon had control over Oliver Oil’s operation of the mini-mart and owed her a duty of protection, appellant relies heavily upon our Court’s decision in
 
 Juarbe v. City of Philadelphia,
 
 288 Pa.Super. 330, 431 A.2d 1073 (1981). However, we find that our ruling in
 
 Juarbe
 
 is not dispositive of the facts in this case. In
 
 Juarbe,
 
 unlike the record presented herein, there was evidence other than the agreements between Exxon and the dealer which supported the plaintiff’s assertion that Exxon had control over the service station. By virtue of that additional evidence, i.e., affidavits, our Court in
 
 Juarbe
 
 determined that the
 
 Green
 
 holding was not controlling.
 
 Juarbe,
 
 288 Pa.Super. at 341-42, 431 A.2d at 1079. Here, however, the Distributor Agreement is the sole evidence of the relationship between Exxon and Oliver Oil. Because of that important distinction, we, thus, find that our analysis herein is guided by the
 
 Green
 
 decision and not
 
 Juarbe.
 

 [5]
 

 . Appellant makes reference to the aforementioned duties in ¶¶ 11, 13, 16, 45 and 46 of the complaint filed against Exxon.