**John F. DONNELLY, Jr. and
Colleen Donnelly**

v.

**SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY
and Muratone.**

**Appeal of SOUTHEASTERN PENNSYL-
VANIA TRANSPORTATION AU-
THORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1998.
Decided March 12, 1998.

Lisa B. Flickstein, Philadelphia, for appellant.

Donald M. Moser, Philadelphia, for appellees. ·

Before FRIEDMAN and KELLEY, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) that denied SEPTA's motion for summary judgment. We reverse.

In 1990, SEPTA awarded a general contract to Tony DePaul & Son (Depaul) for the renovation of elevated rail lines known as the Railworks Project.[1] DePaul then entered into a subcontract with Muratone Company, Inc. (Muratone) to do the painting and sandblasting work.[2] Before Muratone began its sandblasting operations on the Railworks Project, The Philadelphia Electric Company (PECO) disconnected, or de-energized, the electrical lighting attached to the understructure of the overhead rail lines used to illuminate the streets for pedestrian and vehicular traffic to prevent the electrocution of workers. PECO disconnected the lights at DePaul's request, and SEPTA authorized the disconnection of the lights. (R.R. at 253a–56a, 265a–70a.)

---

1. The contract between SEPTA and DePaul required DePaul to "supervise and direct the Work." (R.R. at 152a.) DePaul was "solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the Contract." (R.R. at 152a.) Depaul also agreed that it "shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, *utilities*, transportation, and other facilities and services necessary for the proper execution and completion of the Work." (R.R. at 152a) (emphasis added.)

2. The subcontract between DePaul and Muratone required Muratone to "provide and pay for all temporary services, facilities and controls necessary for the proper execution and completion of [Muratone's] Work, which temporary services and facilities shall include, without limitation, tools, construction equipment and machinery, water, heat, *utilities*, toilet facilities and transportation." (R.R. at 62a) (emphasis added.)

On July 4, 1991, John F. Donnelly, Jr. (Donnelly), a painter/sandblaster employed by Muratone, fell from a scaffold while working on the Railworks Project and suffered multiple injuries. Because Donnelly performed his sandblasting work during the night hours, Muratone supplied a light on the nozzle of the sandblaster, in addition to a "little ground light." (R.R. at 41a.) Donnelly allegedly fell when his light nozzle burned out and it was too dark for him to see where he was walking, causing him to trip over his equipment hose and fall from the scaffold to the street below. (R.R. at 297a–303a.)

Donnelly and his wife, Colleen Donnelly, (together, the Donnellys) filed a complaint in the trial court against SEPTA seeking to recover for personal injuries that Donnelly sustained during the fall.[3] The complaint alleged that SEPTA was negligent in not providing adequate lighting and in not assuring that the scaffold and jobsite were safe. In response to the complaint, SEPTA filed a motion for summary judgment requesting that SEPTA be dismissed from the case on the basis of sovereign immunity. On May 15, 1996, the trial court denied SEPTA's motion. Subsequently, on June 24, 1997, the trial court issued an order permitting SEPTA to file an interlocutory appeal from the trial court's denial of SEPTA's motion for summary judgment pursuant to 42 Pa.C.S. § 702(b).[4]

■ On appeal,[5] SEPTA argues that the trial court erred in denying SEPTA's motion for summary judgment because SEPTA is protected from liability under the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–8528.[6] We agree.

■ A plaintiff seeking to impose liability on a Commonwealth party, such as SEPTA, must establish, pursuant to 42 Pa.C.S. § 8522:(1) that a common law or statutory cause of action exists against the Commonwealth party as a result of a negligent act of the Commonwealth party; and (2) that the Commonwealth party's negligent act falls within an exception to sovereign immunity enumerated in 42 Pa.C.S. § 8522(b).[7]

### I. Common Law Cause of Action

■ With regard to the common law cause of action mandated by 42 Pa.C.S. § 8522(a),

---

3. The complaint also named DePaul as a defendant. DePaul joined Muratone as an additional defendant. On January 26, 1996, the trial court entered an order granting summary judgment in favor of DePaul based upon its status as a statutory employer. After DePaul was dismissed from the case, the claim against Muratone was not pursued.

4. 42 Pa.C.S. § 702(b) provides:

(b) **Interlocutory appeals by permission.**— When a court[,] ... in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

5. Our scope of review of a grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Brezinski v. County of Allegheny*, 694 A.2d 388 (Pa.Cmwlth.1997).

6. SEPTA is a Commonwealth agency which may assert the defense of sovereign immunity. *Evans*

*v. Southeastern Pa. Transp. Auth.*, 149 Pa. Cmwlth. 376, 613 A.2d 137 (1992). 42 Pa.C.S. § 8521 provides the general rule of sovereign immunity, stating:

(a) **General rule.**-Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

7. 42 Pa.C.S. § 8522(a) (emphasis added) provides:

(a) **Liability imposed.**-The General Assembly ... does hereby waive, in the instances set forth in subsection (b) only[,] ... sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act *where the damages would be recoverable under the common law* or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa.C.S. § 8522(b) (emphasis added) provides:

(b) **Acts which may impose liability.**-*The following acts by a Commonwealth party may result in the imposition of liability* on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by: [statute lists nine exceptions].

the Donnellys contend that SEPTA had a common law duty to provide adequate lighting at the Railworks Project jobsite and that Donnelly's damages would be recoverable under common law for breach of that duty. On the other hand, SEPTA argues that damages would not be recoverable under common law because SEPTA, as an employer of an independent contractor, owed no duty to Donnelly and, thus, cannot be held liable for the independent contractor's negligence. We agree with SEPTA's argument.

■ Under the facts of this case, SEPTA is the "employer" of the independent contractor, DePaul.[8] As a general rule, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Thomas v. City of Philadelphia,* 668 A.2d 292 (Pa.Cmwlth.1995); *Ortiz v. Ra–El Dev. Corp.,* 365 Pa.Super. 48, 528 A.2d 1355, *alloc. denied,* 517 Pa. 608, 536 A.2d 1332 (1987). However, an exception to the general rule has developed where the work to be performed by the independent contractor involves "special danger" or "peculiar risk." *Thomas.* Pennsylvania has specifically adopted the exception to the employer's non-liability as found in sections 416 and 427 of the Restatement (Second) of Torts.[9] *Thomas* (citing *Philadelphia Elec. Co. v. James*

*Julian, Inc.,* 425 Pa. 217, 228 A.2d 669 (1967)).

■ A special danger or peculiar risk exists where: (1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, i.e., a reasonable person in the position of the employer would foresee the risk and recognize the need to take special measures; and (2) the risk is different from the usual and ordinary risk associated with the general type of work done, i.e., the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary. *Thomas; Ortiz.*

■ This case requires that we examine the second prong of the test;[10] that prong focuses on the nature of the work to be performed and involves a two-step analysis. *Ortiz.* First, we must examine the risk that would be posed by the general type of work to be performed under typical circumstances. *Id.* Here, the general type of work to be performed is working on a scaffold,[11] and, although typically this work is done at least a few feet off of the ground, it has not been held to be specially dangerous under ordinary circumstances. *See Ortiz* (concluding that working on a scaffold is not specially dangerous). Thus, we must determine

8. Both the Restatement (Second) of Torts and case law consistently use the term "employer" to describe a party with whom an independent contractor contracts for services. Although we utilize the same terminology here, we note that, by its very definition, the relationship between a party who contracts for services and an independent contractor is not that of employer-employee as understood by the law. Thus, while SEPTA hired DePaul to perform services for SEPTA, DePaul is not an employee of SEPTA. *See Thomas v. City of Philadelphia,* 668 A.2d 292 (Pa. Cmwlth.1995).

9. Restatement (Second) of Torts §§ 416 and 427 (1965) provide, respectively:

§ 416. Work Dangerous in Absence of Special Precautions
One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even

though the employer has provided for such precautions in the contract or otherwise.
§ 427. Negligence as to Danger Inherent in the Work
One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

10. Because we conclude that the second prong of the test is not satisfied, we need not address the first prong. Furthermore, the determination of whether a special danger or peculiar risk exists is a mixed question of fact and law and may, in clear cases, be made by the court as a matter of law. *Thomas.*

11. Scaffold is defined as "a temporary or movable platform for workmen (as bricklayers, painters, or miners) to stand or sit on when working at a height above the floor or ground." Webster's New Collegiate Dictionary 1029 (1977).

whether the circumstances under which the general work was done in this case, i.e., the specific project or task, introduced a different kind or level of risk. *Id.* Here, again, we conclude that Donnelly's specific project or task, working on a scaffold to do painting/sandblasting work, did not pose a risk much greater than that posed by the general work of being on a scaffold, and is therefore not specially dangerous. *See Ortiz* (holding that routine construction work on a scaffold clearly involves no special danger or peculiar risk); *Edwards v. Franklin & Marshall College*, 444 Pa.Super. 1, 663 A.2d 187 (1995) (holding that the danger of falling while doing construction work on a high structure is apparent and involves no special danger or peculiar risk). Although Donnelly fell while working with only auxiliary lighting, because working on a scaffold is always above ground level, the danger of falling is inherent under ordinary circumstances. Because the Donnellys have failed to establish that Donnelly's injury was the result of a risk "different from the usual and ordinary risk associated with the general type of work done," [12] the general rule of employer non-liability applies here. Thus, because the Donnellys cannot establish that a common law cause of action exists against SEPTA in accordance with 42 Pa. C.S. § 8522(a), the trial court erred in denying SEPTA's motion for summary judgment.

## II. *Exception to Sovereign Immunity Requirement*

Even if the Donnellys could maintain a cause of action against SEPTA at common law, they would still not prevail because they have failed to establish that any negligence on the part of SEPTA, if proven, falls within one of the exceptions to sovereign immunity listed in 42 Pa.C.S. § 8522(b). Given the expressed legislative intent to insulate the Commonwealth from liability, we are required to strictly construe the exceptions to immunity. *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995); *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987).

Here, the Donnellys maintain that liability may be imposed on SEPTA pursuant to the sovereign immunity real estate exception at 42 Pa.C.S. § 8522(b)(4). Section 8522(b)(4) provides:

(b) **Acts which may impose liability.**— The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . .

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency....

Liability under the real estate exception depends, first, on the legal determination that an injury was caused by a condition *of government realty itself,* deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous. *Finn.* Thus, to pierce SEPTA's immunity, there must be a dangerous defect *of* SEPTA's realty.

The Donnellys argue that the understructure overhead lighting, disconnected under SEPTA's authority to prevent electrocution, is the defective realty which brings this case within the real estate exception. The Donnellys claim that the unsafe scaffold coupled with the inadequate lighting caused Donnelly's fall. However, our courts have held that

---

12. We note further that because the peculiar risk doctrine is an exception to a general rule, it must be viewed narrowly. *Edwards.* Pennsylvania courts have stated:

> To characterize all construction work or all scaffold work as involving a special danger or peculiar risk would render the terms "special danger" or "peculiar risk" meaningless:
>
> In order for the liability concepts involving contractors to retain any meaning, especially in industries such as construction where almost every job task involves the potential for injury unless ordinary care is exercised, peculiar risk situations should be viewed narrowly, as any other exception to a general rule is usually viewed.

*Edwards,* 663 A.2d at 190 (quoting *Marshall v. Southeastern Pa. Transp. Auth.,* 587 F.Supp. 258, 264 (E.D.Pa.1984)).

a scaffold is personalty, not realty, for purposes of immunity, *Maloney v. City of Philadelphia*, 111 Pa.Cmwlth. 634, 535 A.2d 209 (1987), *alloc. denied*, 519 Pa. 669, 548 A.2d 258 (1988), and that the absence of lighting cannot be considered a defect of land itself. *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989).[13] Because Donnelly was not harmed by a defect of SEPTA's real estate, 42 Pa. C.S. § 8522(b)(4) is inapplicable to this cause of action.

SEPTA is protected from liability for this cause of action based upon sovereign immunity because the Donnellys failed to establish both that a common law cause of action exists against SEPTA and that the cause of action falls within an exception to the Sovereign Immunity Act. Thus, the trial court erred in denying SEPTA's motion for summary judgment and, accordingly, we reverse.

### ORDER

AND NOW, this 12th day of March, 1998, the order of the Court of Common Pleas of Philadelphia County, dated May 15, 1996, is hereby reversed.

---

**13.** In reality, the Donnellys do not appear to be predicating liability on a defective condition of SEPTA's realty, but rather on SEPTA's knowledge of an inherently dangerous condition, i.e., the disconnected lights, contiguous with SEPTA realty that SEPTA took no action to prevent foreseeable harm from occurring. This argument is not supported by any exception to the Sovereign Immunity Act. *See Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989).