Wendy BLOCKER, Appellant,

v.

CITY OF PHILADELPHIA.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 1998.
Decided May 4, 1999.
As Amended May 5, 1999.

Patricia J. Conney, Philadelphia, for appellant.

Alan C. Ostrow, Philadelphia, for appellee.

Before SMITH, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Wendy Blocker appeals an order of the Court of Common Pleas of Philadelphia County, First Judicial District, that granted the City of Philadelphia's (City) motion for summary judgment pursuant to what is popularly called the "Political Subdivision Tort Claims Act" (Tort Claims Act).[1] The

---

1. Sections 8541—8542 of the Judicial Code, 42 Pa.C.S. §§ 8541—8542. Section 8541 (relating to governmental immunity generally) provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

Section 8542(b)(3) provides in relevant part:

(b) **Acts which may impose liability.**-The following acts by a local agency or any of

common pleas court granted the City's motion for summary judgment because it determined that the City's conduct did not fall within any exception to governmental immunity (or, more specifically, within the "real property" exception).

According to her complaint, on August 10, 1994, Blocker was a business invitee of the Robin Hood Dell East, which facility is owned, possessed, controlled and maintained by the City, when she fell from defective and unsafe bleachers, which the City did not adequately maintain. Blocker sustained multiple injuries, including injuries to the head, neck and back. In its reply to Blocker's complaint, the City raised as new matter, *inter alia*, the affirmative defense of the Tort Claims Act and the local agency immunity provided thereby. The parties engaged in discovery and, on February 10, 1997, Blocker's attorney deposed Warren Haskins, the Robin Hood Dell East General Manager. Haskins testified that the bench upon which Blocker had been sitting broke because of "[d]eterioration" and that the wooden bleachers "were just a vestige that had never been removed." (Notes of Testimony, N.T., Deposition Testimony of Warren Haskins, February 10, 1997, pp. 14, 27).

Thereafter, the parties proceeded to arbitration on May 8, 1997. At that time, Haskins testified that the bleachers *had* been previously removed, although he had no documentation to bolster his statement. (*See generally* N.T., Arbitration Testimony of Warren Haskins, May 8, 1997, pp. 7–11). He further testified that the bleachers are not attached to the ground and that nothing would happen to either the bleachers or the ground if the bleachers were removed. (N.T., Haskins' Arbitration Testimony, 5/8/97, p. 31). The arbitrators found in Blocker's favor and awarded her a total of $33,218.80 for the payment of medical bills and for pain and suffering. The City then filed a notice of appeal with the common pleas court. As already set forth, the common pleas court eventually granted the City's motion for summary judgment, agreeing with the City that the defective bleacher was not a permanent fixture or condition of the real estate, but personalty, which did not fit within any immunity exceptions.

Blocker now appeals to this Court, raising four questions for our review.[2] Blocker asks: 1) whether the common pleas court erred in granting summary judgment, since the oral depositions of the moving party, without more, are insufficient to support a motion for summary judgment; 2) whether the common pleas court erred in dismissing the City as a party, since a genuine issue of material fact exists as to whether the bleacher from which Blocker fell constitutes a fixture; 3) whether the common pleas court erred in finding that the facts at issue do not involve a negligent act connected with the care, custody or control of real property in the City's possession; and 4) whether this case should be remanded to the common pleas court for further consideration in light of *Martin v. City of Philadelphia*, 696 A.2d 909 (Pa.Cmwlth.1997) and *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997).[3]

its employees may result in the imposition of liability on a local agency:

. . .

(3) *Real property.*-The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.

**2.** On November 9, 1998, this case was reassigned to the authoring judge for disposition.

**3.** Our scope of review of a grant or denial of summary judgment is limited to a determination of whether the common pleas court committed an error of law or abused its discretion. *Donnelly v. SEPTA*, 708 A.2d 145 (Pa. Cmwlth.1998). The note following Pa. R.C.P. No. 1035.2, relating to summary judgment motions, provides, *inter alia*, that this rule "sets forth the general principle that a motion for summary judgment is based on an evidentiary record which entitles the moving party to judgment as a matter of law." *See* Pennsylvania Rules of Court 1998, Note to Pa.

■ We first consider Blocker's argument that the trial court erred in granting the City's summary judgment motion where no documentation supported the testimonial evidence that the City submitted through its witness, Warren Haskins.

■ As our Supreme Court explained in *Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 176, 553 A.2d 900, 903 (1989):

> In determining the existence or non-existence of a genuine issue of a material fact, courts are bound to adhere to the rule of *Nanty–Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932) which holds that a court may not summarily enter a judgment where the evidence depends upon oral testimony.
>
> " 'However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence': *Reel v. Elder*, 62 Pa. 308."
>
> 309 Pa at 238, 163 A. at 524. The Nanty–Glo rule means that:
>
> "Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury."
>
> Goodrich–Amram, 2d, supra, § 1035(b): 4 at pp. 434–35.

(Emphasis in original). *See also* Pennsylvania Rules of Court 1998, Note to Pa. R.C.P. No. 1035.2.

R.C.P. No. 1035.2. In determining whether a summary judgment motion should be granted, we must view the record in the light most favorable to the non-moving party. *DeRitis v. City of Philadelphia*, 136 Pa.Cmwlth. 244, 582 A.2d 738 (1990).

Here, Haskins' testimony raises a genuine issue of material fact with respect to whether the bleacher from which Blocker fell was meant to be removed from the Robin Hood Dell East grounds. As previously stated, Haskins testified before arbitration that the bleacher in question had not been removed, and he testified after arbitration that it had been removed, although he had no documentation to support his altered testimony. Because Haskins' testimony wavered on this salient point, and because it is the province of the jury to assess the credibility of his testimony, we hold that the common pleas court improperly entered summary judgment on this record.

■ Our holding to this effect is made the more reasonable when viewed in light of the development of the law of fixtures.[4] For example, in *In Re Appeal of Sheetz, Inc.*, 657 A.2d 1011 (Pa.Cmwlth.1995), *appeal denied*, 542 Pa. 653, 666 A.2d 1060 (1995), a case involving canopies that were mounted on pillars attached by bolts to the ground, we considered whether these canopies were part of the realty and therefore taxable as real estate. In doing so, we quoted from *Gore v. Bethlehem Area School District*, 113 Pa.Cmwlth. 394, 537 A.2d 913, 915 (1988), *appeal denied*, 519 Pa. 656, 546 A.2d 60 (1988), stating:

> The considerations to be made in determining whether or not a chattel becomes a fixture include (1) the manner in which it is physically attached or installed, (2) the extent to which it is essential to the permanent use of the building or other improvement, and (3) *the intention of the parties* who attached or installed it.

*Appeal of Sheetz*, 657 A.2d at 1013. (Emphasis added). *See also Noll by Noll v.*

4. We acknowledge that the question of whether a chattel is a fixture is one of law. *Canon–McMillan School District v. Bioni*, 127 Pa. Cmwlth. 317, 561 A.2d 853 (1989). However, such a legal determination must be based on established facts of record.

*Harrisburg Area YMCA,* 537 Pa. 274, 643 A.2d 81 (1994).

Admittedly, on this record, there is no evidence that the bleacher from which Blocker fell was attached to the ground. However, since there *is* evidence, presented through Haskins' testimony, that the City never intended to remove the bleacher from the Robin Hood Dell East grounds, we consider it insufficient to dismiss Blocker's cause of action on the basis that the "vestigial" bleacher from which she fell *may not* have been bolted to the ground. This is true because, were the bleacher so attached, she would clearly be able to pursue her claim.

While in *DeRitis v. City of Philadelphia,* 136 Pa.Cmwlth. 244, 582 A.2d 738 (1990), we upheld a grant of summary judgment where the plaintiff, after being nudged by an unidentified spectator, fell from a bleacher erected on City property, there exist important distinctions between that case and the one herein. First, in *DeRitis,* we explained that no factual dispute existed as to whether the bleacher from which the plaintiff fell was a temporary structure. We further stated that, given the temporary nature of its placement, the bleacher was not an improvement and not intended by the City to become a part of the real estate. In the matter *sub judice,* however, a factual dispute, created by Haskins' inherently conflicting testimony, exists as to whether the City intended the bleacher from which Blocker fell to be removed for various City-related functions. Moreover, in *DeRitis,* the plaintiff suffered injury at the hands of an unidentified third party, while, here, Blocker allegedly fell due to the deteriorated condition of the wooden bleacher itself.

For us now to hold that the instant facts do not concern a negligent act connected with the care, custody or control of real property would be precipitous, particularly in light of two recent cases shedding light on the subject at bar. In *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997), a plurality of the Supreme Court held that a fire chief and a fire association were not immune from suit when a can of paint thinner used by the fire chief to remove paint from the fire house floor ignited, severely injuring a visitor to the station.

The Supreme Court stated in *Grieff:*

Here, Grieff's care of the Fire Association's property caused the fire that injured Reisinger. While he was removing paint from the floor, therein caring for the real property, it ignited causing the resultant injuries to Reisinger. Under the real property exception's plain language, Grieff and the Fire Association are not immune from suit.

This case is unlike cases where the Court held that the real property exception did not apply because the government's property only facilitated injuries caused by third parties. In *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), a juvenile escaped from a detention center and attacked a family. The municipality allegedly failed to maintain its property and allowed the juvenile to escape. We held that the municipality was immune from suit because under the immunity statute, the government is not liable for harm caused by third parties.

. . .

We intended *Mascaro* and its progeny to apply in similar cases where third parties cause the harm. See *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (explaining Mascaro decision). They were not intended to apply to a case like this. The Fire Association's property did not facilitate an injury by a third party. Rather, Grieff's and the Fire Association's alleged negligent care of the property caused Reisinger's injury. The Reisingers' claim falls squarely within the real property exception. We thus hold that Grieff and the Fire Association are not immune from suit.

*Grieff,* 548 Pa. at 16–17, 693 A.2d at 197. (Footnotes omitted).

Likewise, in *Martin v. City of Philadelphia*, 696 A.2d 909 (Pa.Cmwlth.1997), where a child was injured at a city recreation center after he tripped and fell allegedly on a goalpost that had once been affixed to the ground, we said:

> Under Grieff, local agency liability for negligence in the care, custody or control of real property does not require the instrumentality causing harm to be "of" the real estate in the sense of being affixed to it. The Martins must be afforded the opportunity to prove their allegations that a goalpost was left concealed in an area intended for play by children, and the finder of fact will then determine whether the facts proved constitute a dangerous condition arising from the care, custody and control of the City's real property.

*Martin*, 696 A.2d at 912. (Footnote omitted).

Finally, this Court in *Davis v. Brennan*, 698 A.2d 1382 (Pa.Cmwlth.1997) agreed that the question of whether a grab bar located in a shower is a fixture must be determined by a jury because of the factual issues involved therein. Viewing the record here in the light most favorable to Blocker, as we must, we believe that the question of whether the wooden bleacher from which she fell was a defective bleacher, which had remained permanently on City property, should be submitted to the jury as fact-finder. The jury can then determine whether the accepted facts establish a dangerous condition stemming from the care, custody and control of the real property owned by the City.

▮ In our estimation, summary denial of Blocker's claim based on the absence of a bolt or other sundry attachment is illogical. Perhaps more compelling, it is anathema to the legislative spirit behind the real estate exception. The legislature of this Commonwealth, recognizing that in certain situations it is necessary to allow citizens to sue, created exceptions to the Tort Claims Act's grant of immunity. By these exceptions, the legislature intended to place an increased duty of care upon municipalities in the manner that they use and maintain real estate. Therefore, the City of Philadelphia's intention as to the status of the wooden bleacher when placing it on the Robin Hood Dell East grounds is extremely relevant. For example, did the City intend that the bleacher remain on those grounds permanently, for the exclusive use and enjoyment of the patrons of the Robin Hood Dell East? If the answer to that inquiry is yes, then the City should not be allowed to escape its duty of care simply because of the lack of a nut or a bolt. The trier of fact must decide the intention of the City in placing the wooden bleacher on the concert hall grounds and must determine how it has been used since its placement thereon.

Because we will not uphold the common pleas court's grant of summary judgment on the state of this record, we now reverse that court's order and remand this matter for trial.

## ORDER

AND NOW, this 4th day of May, 1999, the Order of the Court of Common Pleas of Philadelphia County, First Judicial District, dated July 14, 1997, is hereby reversed and the case is remanded to the common pleas court for trial.

Jurisdiction Relinquished.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority's holding that the intention of the parties is determinative of whether an article is a fixture regardless of whether the article is attached or affixed to the land.

Wendy Blocker (Plaintiff) attended a performance at the Robin Hood Dell East outdoor concert hall (the Dell) in the City of Philadelphia (City). Plaintiff, using a general admission ticket, chose to sit in the middle of the fourth tier on one of two wooden bleachers in the Dell's lawn area. Shortly thereafter, the wooden bleacher collapsed and Plaintiff fell backward to the

ground. As a result of her fall, Plaintiff suffered injuries to her head, neck, back and extremities. Plaintiff filed a civil action against the City seeking damages for the injuries she sustained as a result of her fall and contending that the City was careless and negligent in maintaining the wooden bleacher. In the new matter of its answer, the City asserted, *inter alia,* that it was immune from suit because the property did not fall within any exception to governmental immunity contained in what is commonly known as the "Political Subdivision Tort Claims Act" (Tort Immunity Act).[1] The case was initially submitted to a panel of arbitrators.

Before the panel of arbitrators, Warren Haskins (Haskins), general manager for the Dell, among others,[2] testified that there were two wooden bleachers at the Dell that were not attached to the ground and were vestiges from the old seating arrangement that used to be located there.[3] He indicated that the wooden bleachers were about five tiers high, approximately 12 feet wide and stood approximately four to five feet tall. Haskins stated that the bleachers had been removed in approximately 1991 or 1992 because whenever the City had a major event on the Parkway, "the Recreation [D]epartment normally provides all the bleachers and when they need bleachers, they'll come and salvage them from all over the City," including from the Dell. At the conclusion of the proceedings, the pan-

el of arbitrators ruled in favor of Plaintiff finding the City 100% liable for her injuries and awarded $33,218.80 in damages. The City appealed the award to the trial court.

Prior to trial, the City filed a motion for summary judgment again contending that the wooden bleacher did not fall within the real property exception to governmental immunity as set forth in section 8542(b)(3) of the Tort Immunity Act[4] because it was not a fixture and attaching Haskins' testimony before the panel of arbitrators. Granting the City's motion for summary judgment, the trial court held that the wooden bleacher was not real property under Section 8542(b)(3) of the Tort Immunity Act because, "the bleacher[ ] in question [cannot] be considered a fixture because [it was] not attached to the ground."

In *In Re Appeal of Sheetz, Inc.,* 657 A.2d 1011, 1012–13 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 542 Pa. 653, 666 A.2d 1060 (1995), this court reviewed the standards to be used in determining whether an article is a fixture stating:

> In *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321 (1933), the Supreme Court stated that "chattels" used in connection with real estate are divided into three categories:
>
> > Chattels used in connection with real estate are of three classes: First,

---

**1.** Act of October 5, 1980, P.L. 693, *as amended,* 42 Pa.C.S. §§ 8541 and 8542. Section 8541 of the Act provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

**2.** Plaintiff also testified as to her injuries and the course of treatment and physical therapy she received for those injuries.

**3.** During his earlier deposition, Haskins testified that the bleachers were "not part of the seating area. They were there [and] sit right

outside of a fence area that's not really considered the lawn area [of the Dell]."

**4.** Section 8542(b)(3) of the Tort Immunity Act provides in relevant part:

> **(b) *Acts which may impose liability.*—**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: ... (3) *Real property.*—The care, custody or control of real property in the possession of the local agency[.] (Emphasis in original).

We point out that exceptions to immunity are to be strictly construed and narrowly interpreted. 1 Pa.C.S. § 1924; *Kiley by Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1994).

those which are manifestly furniture, as distinguished from improvements and not peculiarly fitted to the property with which they are used; these always remain personalty. .... Second, those which are so *annexed* to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty—to them the ancient maxim "Quiequid plantatur solo, solo cedit" [Whatever is affixed to the soil, belongs to the soil] applies in full force. Third, those which, although *physically connected with the real estate, are so affixed* as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the *annexation*; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable.... (Citations omitted.)

In addressing whether chattel or an article of property becomes so **affixed** to the land that it becomes part of the real estate, we stated in *Gore v. Bethlehem Area School District,* 113 Pa.Commonwealth Ct. 394, 398, 537 A.2d 913, 915 (1988) that:

A fixture is an article in the nature of personal property which has been so

**annexed to the realty** that it is regarded as part and parcel of the land. Black's Law Dictionary 575 (5th Ed.1979). The considerations to be made in determining whether or not a chattel becomes a fixture include (1) *the manner in which it is **physically attached or installed,*** (2) *the extent to which it is essential to the permanent use of the building or other improvement, and* (3) *the **intention of the parties** who attached or installed it.* McCloskey, 101 Pa.Commonwealth Ct. at 113–4, 515 A.2d at 644 citing Clothier, The Law of Fixtures in Pennsylvania, 32 Pa. B.Q. 66, 66–67 (1960–61). (Footnotes omitted). (Italics in original; bold added).

In reversing the trial court and also quoting from the last part of this quote, particularly the phrase "intention of the parties", to consider whether an article is a fixture, the majority finds intention paramount to this determination and treats an annexation or being attached to the real property only as another factor to be considered in determining that intent.[5] It is clear from the above quote that the *sine qua non* that must be met to even determine the intention of the parties is that the article must be annexed or attached to the real property for it to be a fixture. If it is attached, it is only then that the intention of the parties comes into play as to whether they desired that the article be a fixture or not, and that test only applies to the third category of property described in the

---

**5.** The other reason advanced by Plaintiff that the bleacher is a fixture *"because of its essential use in a specific business, ...* is the article can become part of the real estate, in legal contemplation." *Maloney v. City of Philadelphia,* 111 Pa.Cmwlth. 634, 535 A.2d 209, 212 (1987), *petition for allowance of appeal denied,* 519 Pa. 669, 548 A.2d 258 (1988) (*citing* 16 P.L.E. *Fixtures* § 1 (1959)) (Emphasis added). Because the wooden bleacher was essential to the operation of the Dell as a concert facility, Plaintiff contends that the wooden bleacher must be a fixture. The key words in the quote that plaintiff relies on *"or because of its essential use in a specific business"* is a reference to the "assembled industrial plant doctrine."

Under that doctrine, "machinery and equipment necessary for the operation of a plant and placed therein become fixtures, whether or not they are attached to the realty." *Redevelopment Authority of the City of Johnstown v. Yee Kai Teung,* 5 Pa.Cmwlth. 65, 289 A.2d 498, 501 (1972); *see also Voorhis v. Freeman,* 2 Watts 7 Serg 116 (Pa.1841). However, in *Wilson v. Ridgway Area School Dist.,* 141 Pa. Cmwlth. 607, 596 A.2d 1161 (1991), *petition for allowance of appeal denied,* 530 Pa. 650, 607 A.2d 258 (1992), we held that the doctrine was inapplicable in determining whether an article was a fixture and fell within the real property exception to governmental immunity.

portion of the *Sheetz* test quoting from *Clayton v. Lienhard.* *See, e.g., Noll by Noll v. Harrisburg Area YMCA,* 537 Pa. 274, 643 A.2d 81 (1994) (diving board not fixture because attached by "T-handles" and screws that could be easily removed without tools); *County of Allegheny v. Fedunok,* 164 Pa.Cmwlth. 198, 642 A.2d 595, *petition for allowance of appeal denied,* 538 Pa. 676, 649 A.2d 677 (1994) (diving board not fixture because easily removed from county pool without destroying it); *DeRitis v. City of Philadelphia,* 136 Pa.Cmwlth. 244, 582 A.2d 738 (1990) (bleacher not fixture).[6]

This is true even where the object is massive but movable; gravity is insufficient to meet the attachment test and make an object a fixture. *Canon–McMillan School District v. Bioni,* 127 Pa. Cmwlth. 317, 561 A.2d 853 (1989) (800–pound lathe not fixture because it was never bolted to floor of industrial arts classroom, removed at least once and secured by gravity and electrical cord); *Maloney* (temporary scaffold not a fixture because moveable and reusable).

Because it is undisputed that the wooden bleacher was not attached to the Dell's lawn area, it is not a fixture[7] and any negligent maintenance of it does not fall within the real property exception. Accordingly, I dissent.[8]

---

**6.** In *DeRitis,* because it was undisputed that the bleacher was only a temporary structure and, therefore, not a fixture, we never reached the issue of its attachment to the land upon which it sat.

**7.** Because the wooden bleacher is not a fixture, it remains an article of personal property. In this context, the City's liability is limited to a bailment situation where it would only be held liable for property losses suffered because of the personal property in its care, custody or control. *Borough of West Fairview v. Hess,* 130 Pa.Cmwlth. 385, 568 A.2d 709 (1989).

**8.** Plaintiff also contends that the trial court erred by failing to consider *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997) and *Martin By and Through Martin v. City of Philadelphia,* 696 A.2d 909 (Pa.Cmwlth.1997) in ruling on the City's motion for summary judgment. She asserts that the holdings of these cases govern the outcome here. However, neither *Grieff* nor *Martin* are applicable to this case because what was involved in those cases was whether the conduct causing the plaintiffs' injuries fell within the real property exception to governmental immunity and not whether the property itself was the local agency's real property.